# GENERAL TERM,

## OCTOBER, 1882.

[CONTINUED FROM PAGE 84, *ante.*]

---

### ST. JOHNSBURY & LAKE CHAMPLAIN R. R. COMPANY *v.* B. A. HUNT.

*Master.    Servant.    Interfering with Servant.    Proximate and Remote Damages.*

An action may be sustained by a master against one maliciously causing the arrest of his servant, when no legal cause of action existed against the servant, and the arrest was for the sole purpose of injuring the master ; and, maliciously causing the arrest of a railroad company's engineer while running a train of cars, to delay the train and thereby damage the company, is actionable. And, *held* on demurrer, that it was not necess ry to aver what bec me of the defendant's suit against the servant, if the ple² dings admit that it was malicious, false, and hopeless.

ACTION by railroad company against one for maliciously causing the arrest of its engineer. Heard on demurrer to the declaration, June Term, 1882, Caledonia County, Ross, J., presiding. Demurrer *pro forma* sustained. The declaration averred, in part:

" That the said defendant on said 2d day of November, A. D. 1881, was the owner of a certain one year old heifer and certain other cattle ; that on said 2d day of November, A. D. 1881, the said defendant, at Johnson aforesaid, wrongfully, carelessly and negligently permitted said heifer and other cattle to be and remain on a public highway, in said town of Johnson, which crosses the plaintiff's railroad, and wrongfully permitted said heifer and other cattle to wander from said highway on to said plaintiff's railroad in said Johnson, and wrongfully to remain thereon ; and the plaintiff says that while said heifer was thus wrongfully upon said railroad the said heifer was struck by the plaintiff's said engine and train thus skilfully, carefully and prudently run as aforesaid, and was slightly injured thereby, to wit, at Johnson, on said 2d day of November ; and the plaintiff says that one ———— Collins was the plaintiff's engineer running the said plaintiff's engine and train as aforesaid ; that the said Collins managed said engine and train with skill, care and prudence at the

time said engine struck said heifer ; that said defendant's said heifer was not struck or injured by any wrongful act or neglect of the said Collins as such engineer ; that the said defendant had no just or legal cause of action against the said Collins by reason of said heifer's being struck by said engine as aforesaid ; that said injury arose from the wilful act and neglect of said defendant permitting said heifer to be wrongfully on said railroad ; and the defendant well knew that he had no just or legal cause of action against the said Collins; yet the said defendant, not regarding the rights of the plaintiff, for the sole purpose of injuring the plaintiff in this behalf and of delaying and hindering the plaintiff in the operation of its said road aforesaid in the running of its trains, at Johnson aforesaid, on the 7th day of November, A. D. 1881, sued out a writ of attachment against the goods, chattels and 'estate of the said Collins and capias against the body of the said Collins, . . . and dated the 7th day of November, A. D. 1881, and directed to any sheriff or constable in the State to serve and return, commanding such officer to attach the goods, chattels or estate of the said Collins, and for want thereof to take his body, &c. ; . . . and the plaintiff says that the said defendant, well knowing that the said Collins was an engineer of the plaintiff and then engaged in running one of the plaintiff's engines and trains upon said railroad, and that the arrest and detention of the said Collins would delay the plaintiff's said engineer and train and greatly damage the plaintiff, on the 7th day of November, A. D. 1881, at Johnson aforesaid, placed said writ in the hands of a deputy sheriff of said County of Lamoille, and wrongfully, with the sole purpose of harrassing the plaintiff and delaying it in the operation of its said road and in the running of its trains, caused said deputy sheriff by virtue of said writ to stop the plaintiff's train, on which said Collins was then and there engineer, at an undue and improper honr, to wit, at the hour of three o'clock in the morning, and to arrest the body of said Collins while so running said engine and train of the said plaintiff, and to imprison the body of the said Collins for a long space of time, to wit, for the space of one hour, and thereby to deprive the plaintiff of its said engineer, and to delay and impede its said train for the same space of time."

*Belden & Ide*, for the plaintiff.

This is not a case of the doing of a *lawful* act from a malicious motive, because the act was *unlawful* ; unlawful in this,—arresting Collins from an honest motive would be lawful ; but arresting him from malicious motives, knowing that no cause of action existed, was unlawful.   A prosecution, in arrest, an excessive attachment, &c., malicious and without probable cause, are all unlawful.   1 Willard Torts, 414, 423, 435.   Both the master and servant had a cause of action against the defendant.   The damages are not too remote.   1 Sedgw. Dam. 66, 88 ;   13 Tex. 324 ; *Derry* v. *Fletner*, 118 Mass. 131.   Delay of the plaintiff's train was the direct, proximate, immediate, and necessary result of the defendant's act,—the arrest of the engineer.   The whole proceed-

ing was aimed at the plaintiff; and it struck just where it was aimed. *McAfee* v. *Crofford*, 13 How. 447; *Gunler* v. *Astor*, 16 E. C. L. 357; 19 Johns. 381; *Vannerburgh* v. *Truax*, 4 Denio, 464; *Burrows* v. *Coke*, L. R. 5 Ex. 67; *Scott* v. *Kenton*, 81 Ill. 96; *Tarleton* v. *McGawley*, Peake, 205; *Ashley* v. *Harrison*, Ib. 194; *McCarthy* v. *Guild*, 12 Met. 291; *Haywood* v. *Collinge*, 9 Ad. & E. 268; *Page* v. *Cushing*, 38 Me. 527. If I should descend into a deep well to repair or cleanse it, leaving only my servant at the top to draw me up, can the defendant take advantage of my situation, arrest and carry off my servant on a known false and malicious writ for the sole purpose of depriving me of his service, and leave me to die at the bottom of the well, with no liability to me for the wrong thus purposed and consummated? He can, if the theory of the defence in this case is correct. See *Griffin* v. *Farwell*, 20 Vt. 151.

*P. K. Gleed*, for the defendant.

It is true, perhaps, that the novelty of this case is not conclusive against it. The question is: Has the plaintiff been injured in a *legal* right? Was the act of arresting Collins illegal as to this plaintiff? It may or may not be legal *as to Collins*. That is not the question. What is the fair scope of the words, " caused the said deputy sheriff by virtue of said writ to stop the plaintiff's train " ? This cannot mean a physical interferance with the train, —throwing the writ across the track, and commanding it to stop, or by other force. The words mean that the sheriff caused the train men to stop the train so that he could arrest Collins. The gravamen of the count is the arrest of Collins; and the question remains, was it an infringement of the plaintiff's rights? The pleader gains nothing by stating the motive, if the act was legal. *So. Royalton Bank* v. *Suffolk Bank*, 27 Vt. 505; *Chatfield* v. *Wilson*, 28 Vt. 49; 11 Vt. 22. There is no averment of malice, or want of probable cause, against Collins. The damage as to the plaintiff was *damnum absque injuria*. The railroad company cannot raise the question of the illegal arrest of Collins. He alone can sue for malicious prosecution,—and that only after judgment in his favor on the writ on which he was arrested. 44 Vt.

124 ; 42 Vt. 276 ; 1 Am. Lead. Cas. 751. Inconvenience result-
ing from legal action is damage without injury. Reeves Dom.
Rel. 536. At common law the killing of a person upon whom
another person depended for support was not actionable ; much
less the legal arrest of a railroad's engineer. 1 Smith Lead. Cas.
445. No right of the plaintiff has been infringed upon. The
damage is too remote. 1 Smith Lead. Cas. 450 ; *Barker* v. *Wil-
lard*, 18 C. B. 58 ; 11 Ired, 291; 2 Addison Torts, 6. That a
judgment against Collins in the first suit would be a bar; see 25
Vt. 635 ; 39 Vt. 326 ; Bigelow Estop. 61; it should, therefore,
have been alleged that that suit terminated, and in his favor.

. The opinion of the court was delivered by

VEAZEY, J. The case stands on demurrer to the first count of
the declaration. The defendant's counsel contends that the " grav-
amen of the count is the arrest of Collins," and that his arrest
was no infringement of the rights of the plaintiff; that this was
illegal, if at all, only as against him, and that the plaintiff cannot
recover damages for an act not illegal as to itself; that the dama-
ges resulting to the plaintiff from this arrest of its servant upon
due process are *damnum absque injuria*.

We think the assumption that the gist of the count is the arrest
of Collins is unsound. The gist is the delay of the train for the
purpose of injury to the plaintiff. To accomplish the injury the
defendant resorted to the contrivance of a legal proceeding against
the servant. The process was correct in form, and was a legal
warrant for the act of the officer. But, back of that, the act of
resorting to legal proceedings against Collins was, under the aver-
ment, wrongful, and this wrongful act was adopted as a means
and for the purpose of injuring the plaintiff. The preliminary or
concurrent wrong to Collins did not alter the character of the
wrong to this plaintiff. The wrong to Collins was the instrumen-
tality adopted to accomplish this injury. A suit for malicious
prosecution by Collins would not be affected by the fact that the
officer was warranted in serving the original process, or that his
act of arresting was legal as to him, but it would reach back to
the question of motive and probability of cause. No more should

the intervening act of the officer affect the plaintiff's remedy here. The same injury to the plaintiff might have been accomplished by placing an obstruction upon the track. Probably if the defendant had had a lawful claim against Collins, and the enforcement of it by legal process had produced the same injury to the plaintiff company, it would have been remediless even if the real motive of the process had been such injury ; because it is immaterial with what motive a person does a legal act. But this suit is not brought by the plaintiff for interference with its servant and to recover damages resulting from loss of his services ; it is brought for stopping and delaying the train to the plaintiff's injury. The declaration sets up the unwarrantable interference with the servant simply as a method by which the designed result was accomplished.

It is further contended in behalf of the defendant that Collins being the injured party has his action for the injury done, and that the defendant ought not to be subjected to two actions for the same act.

It is admitted under the demurrer that this plaintiff was injured by the act of the defendant which we hold was wrongful. It is no answer to a claim for this injury to say that this act also injured another party. Each party suffering directly from a wrongful act is entitled to a remedy against the wrong doer. A single act of trespass destroying one man's arm and another man's leg would create a right of action in each separately. Further suggestion is made that the declaration contains no averment that the suit against Collins has terminated in his favor, and that the same rule should apply here as though this were his suit for malicious prosecution. This suggestion is made upon the assumption that the declaration shows a privity between Collins and the railroad company in respect to the subject-matter of the suit against Collins. Treating the assumption as correctly made, how does the case stand ? The declaration states in substance that the suit against Collins was utterly groundless and hopeless. The demurrer admits this. The rule that the plaintiff in an action purely for malicious prosecution should allege and prove that the original proceeding has terminated in his favor, rests on the ground that the court will not tolerate inconsistent judgments upon the same

question between substantially the same parties. But there is a class of actions for malicious prosecution where it has been held that an admission that the alleged malicious suit could not be maintained, obviated the necessity of proving it had terminated. *Wills* v. *Noyes*, 12 Pick. 326 ; *Page* v. *Cushing*, 38 Me. 527. In the latter case it was held that the admission may be by *plea* or by parol. The court there say : " The bare possibility of inconsistent verdicts should not exempt or relieve a party from responsibility for admitted wrong." This declaration does not state what became of the other suit. The demurrer admits it was malicious, false, and hopeless. Any presumption of probable cause, or that Hunt was in the pursuit of a legal right against Collins, is overcome by the admission. The technical averment which this declaration lacks is supplied by averments admitted to be true, showing that the result must follow or must have occurred which the omitted averment would have alleged had occurred. But if this answer to the above suggestion is unsound, upon what ground would this plaintiff be estopped by a judgment against the defendant in the former suit, so far as anything is disclosed in this declaration ? It was not a party thereto, nor was it vouched in to defend. It neither assumed, nor had the opportunity, to control the defence. It was not in a situation to prevent a judgment against the defendant therein by collusion, by default, by ignorance, or by concession or compromise. Judgments are conclusive only upon parties and those claiming under them. This rule, upon the ground that a principal and servant are substantially one in interest, might well be expanded so as to admit it in a suit against a servant when the same question has been decided and judgment rendered for the defendant in a suit against the master for the alleged trespass of the servant for which the master is responsible, as illustrated in the case of *Emery* v. *Fowler*, 39 Me. 326 ; but such is not this case. The general rule is that the master is responsible for the acts of the servant ; but there are several exceptions. Dunlap's Paley on Agency, 298. There may also be wrongs committed by the servant for which the master only is responsible. 2 Hil. on Torts, 554. The relative status of this plaintiff and its engineer as to the wrong charged upon the latter cannot be cer-

tainly determined from this declaration ; but treating it as a tres-pass for which this plaintiff was responsible, then they could have been sued together or separately ; and they could have defended each independently of the other.   Judgment unsatisfied against either separately would be no bar to another suit against the other. This point was settled early in this State in the case of *Sanderson* v. *Caldwell*, 2 Aik. 195 ; where the authorities are cited and fully discussed by Judge PRENTISS.   In the later case of *Andrus* v. *Howard*, 36 Vt. 248, the further question, somewhat controverted elsewhere, was here settled that the master is liable in *trespass* for an act of his servant, which is a trespass, though it occur through the neglect or unskillfulness of the servant.   As joint trespassers, independent of the relation of master and servant, it is plain the former judgment for the plaintiff, if there was one, would not conclude this plaintiff.   With this relation existing if the judgment was there for the defendant, it is equally plain that it would not have concluded the plaintiff therein from another ac-tion against this plaintiff if the former action failed on the ground that the wrong which the former plaintiff suffered, though com-mitted by the servant, was one for which this plaintiff only, if any-body, was liable.   " No person can bind another by any adjudi-cation, who was not himself exposed to the peril of being bound in like manner, had the judgment resulted the other way :" Free-man on Judgments, s. 154 ; or as expressed by SPENCER, J., in *Case* v. *Reeve*, 14 John. 83 : " No person can derive benefit from a verdict who would not have been prejudiced by it, had it gone contrary."   If, therefore, a state of facts might be disclosed which would preclude the application of the maxim, *res inter alios acta*, &c., which is doubtful, this declaration fails to disclose them. The reason of the maxim as expressed by Wharton, 184, is, that it would be unjust to bind a person by proceedings taken behind his back, to which he was, in fact, no party, and to which he had not an opportunity of making a defence, and from which he could not appeal.   *Nason* v. *Blaisdell*, 12 Vt. 171.   We think no privity is disclosed in this declaration between the railroad company and its engineer, in respect to the point involved in the other action. It is further insisted that the action cannot be maintained because

the damages are inconsequential and too remote. We think the injury and damages were direct. They were not only such as could reasonably have been contemplated at the time, which is one of the tests laid down in Sedgwick on Damages, vol. 1, marg. p. 66-7, but they were the damages actually contemplated. In *Derry* v. *Flitner*, 118 Mass. 131, the court say : " A wrong doer is liable not only for those injuries which are caused directly and immediately by his act, but also for such consequential injuries as, according to the common experience of men, are likely to result from his act." Sedgewick, 88, says the disposition of courts is to include in the injurious consequence, flowing from the illegal act, those that are " very remote." No extreme view is required here. It cannot be said that the stoppage and delay of the plaintiff's train was a remote result of the defendant's act. It was the probable, if not necessary, result. And it was in fact the direct, proximate, immediate and contemplated result. Familiar cases often cited as showing what damages are not too remote to be included in the recovery, are *McAfee* v. *Crofford*, 13 How. (U. S.) 447 ; *Gunter* v. *Astor*, 4 J. B. Moore, 12 (16 Eng. Com. Law, 357) ; *Gribb* v. *Swan*, 19 J. R. 381 ; *Vanderburg* v. *Truax*, 4 Denio, 464 ; *Burrows* v. *Coke & Gas Co.*, L. R. 5 Ex. 67 ; *Scott* v. *Kenton*, 81 Ill. 96 ; *Tarleton* v. *McGawley*, Peake, 205. In the latter case it was held by Lord KENYON, at *Nisi Prius*, that an action lay for firing on negroes on the coast of Africa, and thereby deterring them from trading with the plaintiff, so that the plaintiff lost their trade. There the trespass was directly against the negroes, but the wrong intended and the injury actually done was to the plaintiff.

The defendant cites the case of *Ashley* v. *Harrison*, Peake, 194, where the proprietors of a theatre brought an action against the defendant for having written a libel upon one of the plaintiff's singers, by which she was deterred from appearing, whereby his profits were lost. Lord KENYON held that the damages were too remote ; but this was on the ground that the damages arose from the vain fears or caprice of the actress. She could have sung but would not. Her fears or caprice intervened between the wrong-

37

ful act and the alleged result. To make the case parallel to this she should have been driven from the stage while performing her part by unlawful interference of the defendant, for the purpose of injury to the plaintiff. See *Hughes* v. *McDonough*, 14 Vroom's, (N. J. Law) Reports; also published in Albany Law Journal, May 27, 1882, p. 410.

The *pro forma* decision of the County Court is overruled, and the first count is adjudged sufficient, and the cause is remanded with leave to the defendant to replead, upon the usual terms.