GENERAL RUBBER COMPANY, Respondent, *v.* ELIAS C. BENEDICT, Appellant.

Corporations — duty of directors to preserve property of corporation — misuse of corporate funds causing loss to corporation — liability of director who had knowledge of such illegal application of funds but intentionally concealed such fact.

1. A director of a corporation owes to it good faith and vigilance and is bound to take the same care of its property that men of average prudence take of their own property.

2. The plaintiff corporation is the principal stockholder in a subsidiary corporation, the general manager of which was a defaulter. Plaintiff in this action alleges that the defendant, who was one of its directors, knew of this misuse of moneys and acquiesced in it and approved of it, and for his own profit intentionally withheld and concealed the truth. It is also alleged that had defendant given this information, plaintiff could have prevented the misapplication and the loss. *Held*, that his duty to preserve the estate, the breach of that duty, and the resulting damage, call for the application of the principle that there is no wrong without a remedy and that the complaint is sufficient on demurrer.

3. The claim that defendant is not liable to plaintiff by reason of the fact that he is liable to the subsidiary company is untenable. A wrong to an individual or corporation does not cease to be remediable because it may also be a wrong to some one else.

*General Rubber Co.* v. *Benedict*, 164 App. Div. 332, affirmed.

(Argued February 23, 1915; decided May 11, 1915.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 14, 1914, which affirmed an interlocutory judgment of Special Term overruling a demurrer to the complaint.

The following question was certified: "Does the complaint state facts sufficient to constitute a cause of action?"

*William M. Ivins* and *Harold J. Roig* for appellant. The distinction sought to be made by the court below that this action will lie "because it is not a derivative action in which the stockholder is seeking to recover his share of the damages sustained by a corporation in which he is interested, but an action accruing solely to a corporation which has been damaged by a director's neglect or disregard of his duties to it" is untenable. (*Niles* v. *N. Y. C. & H. R. R. R. Co.*, 69 App. Div. 144; 176 N. Y. 119; *Smith* v. *Hurd*, 12 Metc. 375.) A stockholder may not recover, *qua* stockholder, upon a state of facts showing an injury to the corporation. (*Niles* v. *N. Y. C. & H. R. R. R. Co.*, 176 N. Y. 119; *Flynn* v. *B. C. R. R. Co.*, 158 N. Y. 493; *Howe* v. *N. Y., N. H. & H. R. R. Co.*, 142 App. Div. 451; *Kavanaugh* v. *Comm. Trust Co.*, 181 N. Y. 123; *Loewenstein* v. *D. S. W. M. Co.*, 94 App. Div. 387; *Delavan* v. *N. Y., N. H. & H. R. R. Co.*, 154 App. Div. 34; *Michel* v. *Betz*, 108 App. Div. 241; *Dudley* v. *Armenia Ins. Co.*, 115 App. Div. 380; *Neufille* v. *N. Y. & N. Ry. Co.*, 81 Fed. Rep. 12; *Hirsh* v. *Jones*, 56 Fed. Rep. 137.) The plaintiff's theory will subject the defendant to a double or treble recovery. (*G. A. Coffee Co.* v. *Diehl*, 86 Misc. Rep. 548; *Rogers* v. *Atlantic Co.*, 213 N. Y. 246; *Ottenger* v. *Bennett*, 203 N. Y. 555.)

*Francis Lynde Stetson, Nathaniel Myers* and *George H. Gardiner* for respondent. The defendant is answerable to the plaintiff to compensate it for its loss. (*Hun*

v. *Cary*, 82 N. Y. 65; *Hobart* v. *Dovell*, 38 N. J. Eq. 553; *Williams* v. *McKay*, 46 N. J. Eq. 25; *Campbell* v. *Watson*, 62 N. J. Eq. 396; *Bloom* v. *Nat. Benefit Assn.*, 81 Hun, 120; *Anthony* v. *Am. Glucose Co.*, 146 N. Y. 407; *Matter of Watertown Paper Company*, 169 Fed. Rep. 252, 256; *Matter of Rieger, Kapner & Altmark*, 157 Fed. Rep. 609, 613; *U. S.* v. *Milwaukee Refrigerator Co.*, 142 Fed. Rep. 247; *Colebrook* v. *Perkins*, 147 Fed. Rep. 166; *Kendall* v. *Klapperthal Co.*, 202 Penn. St. 596; *Exploration Co.* v. *Pacific Co.*, 177 Fed. Rep. 825; *People* v. *North River S. R. Co.*, 121 .N. Y. 582; *State* v. *Standard Oil Co.*, 49 Ohio St. 137; *Cawthra* v. *Stewart*, 59 Misc. Rep. 38; *Bentz* v. *Crotona Park. Co.*, 81 Misc. Rep. 364; *Booth* v. *Bunce*, 33 N. Y. 139; *Union P. R. R. Co.* v. *Chicago, etc., R. R. Co.*, 163 U. S. 564.)

CARDOZO, J.   This case comes here on a demurrer to a complaint.   The plaintiff is a corporation.   It is organized under the laws of New Jersey.   The defendant is one of its directors.   There is another corporation, organized in the same state, known as General Rubber Company of Brazil.   The capital stock of the latter company is made up of three thousand shares; and all the shares, with the exception of eighteen, are held and owned by the plaintiff.   For convenience, we shall refer to the plaintiff as the holding, and the General Rubber Company of Brazil as the subsidiary company.   The general manager of the subsidiary company at Para, Brazil, was one Arnold J. Hutter.   While acting as manager for that company, he became the manager of a rival business.   This business was conducted at first under the name of E. Levy, and later, after a corporation had been organized, under the name of the Moju Company.   The defendant was the owner of more than one-fourth of the stock.   He was also its vice-president.   The Moju Company met with reverses, and finally became insolvent.   To relieve its embarrassments, Hutter, according to the allegations of

the complaint, took the moneys of the General Rubber Company of Brazil and gave them from time to time to the Moju Company. The defalcations extended over a period of more than a year, and caused a loss of $185,000. The charge is made that the defendant knew of this misuse of moneys, and that he acquiesced in it and approved of it. He neglected, it is said, to inform the plaintiff of Hutter's wrongdoing; he withheld and concealed the truth, so it is charged, intentionally and for his own profit; and the averment is that if such information had been given, the plaintiff could and would have prevented the misapplication and the loss. Because of this violation of his duty, the value of the plaintiff's shares in the subsidiary company is said to have been lessened, and the plaintiff to have been otherwise damaged, in a sum exceeding $185,000. For the amount of this loss with interest, judgment is demanded.

The foregoing summary states in briefest outline the averments of a voluminous complaint. It suffices, however, to indicate the problem of law which is involved. We are to determine whether the defendant is liable to the holding company for the diminished value of its shares resulting from the waste of the assets of the subsidiary company.

The defendant was not a director of the subsidiary company. He *was* a director of the plaintiff. Because of that relation he owed to the plaintiff the duty of good faith and vigilance in the preservation of its property. The duty and the breach, coupled, it is here alleged, with damage, make out a cause of action. (*Ashby* v. *White*, 3 Ld. Raym. 320.) Such cases as *Smith* v. *Hurd* (12 Metc. 375) and *Niles* v. *N. Y. C. & H. R. R. Co.* (176 N. Y. 119) are pressed upon us by the defendant. They are inapplicable here. The distinction was well put by TAFT, J., writing for the Circuit Court of Appeals in *Ritchie* v. *McMullen* (79 Fed. Rep. 522, 533): "It is undoubtedly true, as the

Circuit Court held, that a stockholder, merely as such, cannot have an action in his own behalf against one who has injured the corporation, however much the wrongful acts have depreciated the value of his shares (citing *Smith* v. *Hurd, supra,* and other cases). But we are of opinion that this principle has no application where the wrongful acts are not only wrongs against the corporation, but are also violations by the wrongdoer of a duty arising from contract or otherwise, and owing directly by him to the stockholders." The stockholder in those cases did not sue his own agent. He sued another's agents, *i. e.,* the directors of a company, and sued them for the waste of the company's property. In his own right, and not in a derivative action, he attempted to recover his own damages, which he measured by the diminution in the value of his shares. The decision was that the delinquent directors were the agents of the company; that they owed a duty to the company and not to the individual stockholders; and that if there had been any breach of that duty the company must redress the wrong. But here the situation is a different one. Here the stockholder is not suing the agent of another company; it is suing its own agent. The stockholder happens to be itself a corporation; the defendant happens to be a director; but the legal problem would be the same if the plaintiff were a natural person, and the defendant an executor or trustee. It would also be the same if the plaintiff, instead of being substantially the sole stockholder, were one stockholder among many. If the trustee of an estate, holding shares in a bank, should learn that the cashier was looting it, and with that knowledge should keep silent, the defendant would have us say that the beneficiaries under the will would have no remedy for the ensuing loss. A trustee in the case supposed would owe no duty of active vigilance to the bank whose property was stolen. If not liable to those interested in the estate, he would not be liable to any one. Yet his duty to preserve the estate, the breach of

that duty, and the resulting damage, would seem to call for the application of the principle that there is no wrong without a remedy. The case supposed does not differ in its essence from the case presented. The defendant, as a director of a corporation should have taken the same care of its property that men of average prudence take of their own property. (*Hun* v. *Cary*, 82 N. Y. 65; *Latimer* v. *Veader*, 20 App. Div. 418, 428; *Bosworth* v. *Allen*, 168 N. Y. 157.) A jury might not unreasonably find that the care exacted by that rule would involve at least a warning that the subsidiary company was in the management of a thief, and that the value of the shares was vanishing. It is argued that even if the warning had been given, the plaintiff was only a stockholder in the subsidiary company, and hence was not in a position to stop the waste. The allegation is, however, that it could and would have done so; and we must hold this sufficient on demurrer. There are many things it could have done. It could at least have sounded an alarm that might have led to Hutter's removal. The trial will show whether its intervention would or would not have been efficient. In any event, we cannot say, and least of all as a matter of law, that the opportunity to intervene was valueless. (*Leather Mfrs. Bank* v. *Morgan*, 117 U. S. 96, 115; *Continental Nat. Bank* v. *Nat. Bank of Commonwealth*, 50 N. Y. 575; *Voorhis* v. *Olmstead*, 66 N. Y. 113, 118; *Rothschild* v. *Title Guarantee & Trust Co.*, 204 N. Y. 458; *Cassidy* v. *Uhlmann*, 170 N. Y. 505, 518, 521.).

It is strongly argued, however, that the defendant is answerable for the same wrong to the subsidiary company, and is thus exposed to the risk of a double liability. We think the wrong to the plaintiff does not cease to be remediable because it may also be a wrong to some one else. If the defendant has violated any duty to the subsidiary company, it is not the same duty that he owes to the plaintiff. He is not liable to the subsidiary company *qua* director. He is not liable to that company

for mere neglect. He is liable to it, if at all, only as a stranger might be liable. If he has joined in a conspiracy to plunder it, he must, like any other tort feasor, make compensation for the plunder. There are allegations in the complaint which are broad enough to be construed as charging that he was a party to such a conspiracy. We cannot know whether they will be proved. If they are proved in all their fullness, they will show that the subsidiary company as well as the plaintiff has been wronged. Less, however, may be proved; the defendant may not have counseled or ratified Hutter's acts, or otherwise made himself a party to them; and still if he knew of them, and was silent, he may have failed in the stricter duty that he owes to the plaintiff. It is not for us at this time to say to what extent the duties are coterminous. It is enough that they have a different origin, a different standard, and a different measure.

The argument is made, however, that since the duties overlap, a double liability is threatened. To-day the defendant is called upon to make good the diminished value of the plaintiff's shares. To-morrow he may be called upon at the suit of the subsidiary company to replenish its wasted treasury. We think the argument confuses the cause of action with the damages. If the defendant is solvent, and has so made himself a party to the conspiracy that he is liable as a tort feasor to the subsidiary corporation, the existence of such a cause of action will be reflected, like the ownership of any other asset, in the value of the shares. The diminution in value will be one thing if the subsidiary corporation is without a remedy against any one. It will be another thing if there is a remedy against a solvent wrongdoer. It will be one thing if the cause of action in favor of the company is conceded or certain. It will be another thing if the cause of action is contested or doubful. A contested claim is rarely appraised at its face value. The

expenses of litigation, its delays, its uncertainties, these and like elements may make the shares less valuable, even though a remedy at the suit of the company exists, than they would be if the wasted moneys were back in the treasury. The extent of the reduction in value is to be measured by the jury. We must keep in mind stead- fastly the essential nature of the cause of action. It is not an action to restore to the subsidiary company the money that has been abstracted. It is an action to restore to the holding company the diminished value of its shares. If the subsidiary company were suing the defendant for a conversion of its assets, it would, of course, be no answer for him to say that there was a remedy also against Hutter. He would be bound to restore what he had taken, or permitted others to take. It is possible that if his offense was merely one of negligence, he might through subrogation have a remedy over against the principal offender. (*Steele* v. *Leopold,* 135 App. Div. 247, 256, 257; affd., 201 N. Y. 518; *Chillingworth* v. *Chambers,* L. R. [1896] 1 Ch. 685; *Moxham* v. *Grant,* L. R. [1900] 1 Q. B. 88.) But in this action he is under a very different duty. Nothing has been taken directly from the plaintiff. What has been taken belongs to the subsidiary company. The defendant is not sued for a wrongful taking. He is sued for the wrongful failure to preserve the value of the plaintiff's shares. Only to the extent that the taking has made the individual shares less valuable, has a liability arisen. In such circumstances there is no right of action in favor of the plaintiff against the primary wrongdoer to which the defendant can be subrogated. The ultimate devolution of the burden must, therefore, be determined, not in some other action, but here and now. In these conditions, it becomes our duty, through a sound definition of the measure of damages, to work out a result which will be just alike to plaintiff and to defendant.

The existence of a cause of action does not depend,

however, upon the extent of the recovery. If the subsidiary company has no remedy that will enable it to make good the loss, the reduction in the value of the shares may be equal to the fund converted. If it has a plain and certain remedy either against the defendant or against some other solvent party to the wrong, the reduction in the value of the shares may be less than the converted fund, or, it may be, almost nominal. We can imagine a case where a director has borrowed money illegally, and may, therefore, be required to repay it. The corporation in such circumstances has a cause of action to compel the money to be restored, yet the value of the shares in the hands of the stockholders may not be reduced at all. Whatever difficulty there is in determining the measure of the loss is inherent in the very nature of these problems of appraisal. To determine the value of the shares, every asset of the subsidiary company must be reckoned, and the defendant's liability to that company, if it exists, must be included like any other.

We think, for these reasons, that the menace of a double liability is illusory. The defendant owes a duty to the plaintiff; if the complaint speaks truly, he has violated that duty; and to the extent of the resulting damage he must answer for the wrong.

The order should be affirmed, with costs, and the question certified answered in the affirmative.

COLLIN, J., (dissenting.) The facts alleged as constituting a cause of action at law in favor of the plaintiff against the defendant, adequately stated for the purposes of this discussion, are: The plaintiff, a New Jersey corporation, owned, as an asset, all the three thousand shares of the capital stock of another corporation hereinafter denominated the Brazil company, except eighteen. The defendant was a director of the plaintiff. He was not a director of or connected with the Brazil company. An agent of the Brazil company, wrongfully and without

the knowledge of it or the plaintiff and with the knowledge, acquiescence and approval of the defendant, abstracted from time to time, through the period of about one year, from its treasury and delivered to a third corporation, the Moju Company, moneys aggregating $185,000, no part of which has been repaid to the Brazil company. The defendant owned about one-quarter of the issued shares of the capital stock, and was the vice-president of the Moju Company. The defendant did not inform the plaintiff, which remained ignorant, while it progressed, of the misapplication of the moneys of the Brazil company. The plaintiff, had it known of the misuse, "could and would have taken such action as would have caused the funds and moneys (of the Brazil company) theretofore so misapplied to have been recovered and as would have prevented the said further misapplication of said funds and moneys to such wrongful uses." The Moju Company is insolvent. The misappropriations by the agent of the Brazil company of its moneys have lessened the value of the assets of the plaintiff, to wit, the shares of stock of the Brazil company in a sum exceeding $185,000. Judgment for the said sum of $185,000 with interest is prayed for.

Certain facts are clear. This is an action at law. The Brazil company was an independent legal being or entity, and its status was unaffected by the ownership of the plaintiff of its capital stock. (*Buffalo Loan, T. & S. D. Co.* v. *Medina Gas & E. L. Co.*, 162 N. Y. 67, 76; *Saranac & L. P. R. R. Co.* v. *Arnold*, 167 N. Y. 368.) The Brazil company owned exclusively the abstracted moneys. The plaintiff did not at law have right, title or interest in or to them, the whole title of which was in the despoiled corporation. (*United States Radiator Corp.* v. *State of New York*, 208 N. Y. 144.) The plaintiff, by virtue of its shares of the capital stock of the Brazil company, had merely the right to partake, proportionately, of the surplus profits or fund of the company as declared

or distributed by its directors. (*Burrall* v. *Bushwick R. R. Co.*, 75 N. Y. 211; *Plimpton* v. *Bigelow*, 93 N. Y. 592, 599; *United States Radiator Corp.* v. *State of New York*; 208 N. Y. 144.) The action is not derivative, that is, it is not brought in behalf of the Brazil company. The pith of the alleged cause of action is, the abstraction of the moneys and the neglect of the defendant to inform the plaintiff of it.

The injury to the assets of the plaintiff was not direct, and came from and through the injury to those of the Brazil company. Those assets were not taken or directly injured or interfered with. They, as it is alleged, were depreciated in value by the "wrongful misappropriation" of the funds of the Brazil company, no part of which the plaintiff then owned or had a right to possess or control or has now the right to recover. The Brazil company owned them and was entitled to possess and dispose of them and it alone has the right to recover them. Whenever recovery or restitution of them is made to it, the alleged injury to the plaintiff will be obliterated. The subsequent disposition of them will be wholly within the authority of the Brazil company and it may naturally and lawfully result, through the hazards of business, that the plaintiff will not receive directly or indirectly any advantage from them. If at the commencement of this action the Moju Company or Hutter, the general manager and despoiler of the Brazil company, or this defendant had paid that company the sum abstracted, the plaintiff would not have had the alleged cause of action, because the plaintiff has no right to those moneys and upon their return to their owner, the Brazil company, it is not under any damages. If the defendant should pay the sum of them or any part to this plaintiff, he, under the allegations of the complaint, which permit proof that the defendant conspired with the agent of the Brazil company, would remain liable to the Brazil company for them, because they were taken from and belong

to the Brazil company, but if he paid them to the Brazil company he would not thereafter be liable to the plaintiff, because it had no right to them and its damage or loss would have been wholly remedied. There was but a single loss, although that loss may indirectly and collaterally affect the creditors and stockholders of the one loser, to wit, the Brazil company. A single recovery by the Brazil company would afford complete indemnity to the plaintiff and all interested parties. Each of the Brazil company and the plaintiff has not the right to recover the one-hundred and eighty-five thousand dollars. The general rule of the law is, that an action must be brought by the person having the title to the damages which are sought to be recovered for the injury and not the person or persons who are indirectly damaged by it.

If the defendant at his first knowledge of the spoliation during its progress had informed the plaintiff of it, the plaintiff would not have had the right to any of those moneys or any damages, a fact which the complaint recognizes in the averment that if he had done so " the plaintiff could and would have taken such action as would have caused the funds and moneys (of Brazil company) theretofore so misapplied to have been recovered and as would have prevented the said further misapplication of said funds and moneys to such wrongful uses." The quoted allegation is a conclusion of law based upon the ownership by the plaintiff of nearly all of the capital stock of the Brazil company, but treating it as an allegation of fact, there remains the truth that the plaintiff has not been injured by the neglect of the defendant. The power and authority which it then had to cause the Brazil company to recover the misapplied funds, it still has. While the Moju Company is insolvent, Hutter, the agent of the Brazil company, and this defendant, presumptively, are solvent. Solvency of the individual, no refuting circumstance appearing, is pre-

sumed. (*First National Bank of Meadville* v. *Fourth National Bank, N. Y. City*, 77 N. Y. 320; *Potter* v. *Merchants' Bank of Albany*, 28 N. Y. 641.) The plaintiff in proving the alleged cause of action would prove a cause of action in favor of the Brazil company against Hutter and this defendant, as tort feasors, through which that company could recover the full amount of the funds appropriated by them with interest — a result the equivalent of that obtainable under full and immediate information of the misappropriation to the plaintiff by the defendant. The plaintiff is seeking to recover, through the alleged wrong of the defendant, a sum which it never had, and would not have had if the defendant had told it all that he knew, which is recoverable by the Brazil company, and the recovery of which by that company will make whole the value of the plaintiff's shares of its stock. The law does not permit such a result.

In *Wells* v. *Dane* (101 Me. 67) the plaintiff was a shareholder in the corporation, and brought the action against the defendants, officers of the corporation, to recover damages, alleging that the wicked and wrongful acts were with the specific intent and malicious and fraudulent design of injuring the plaintiff. The court held that the plaintiff did not have a cause of action, and for reasons which I think determine the question here in accord with complete and final justice. It said: "There may be cases of injuries to the individual rights of the shareholder where he and not the corporation must seek redress, such for instance as the levying of an unlawful tax on shares held by the individual stockholder, mutilation or destruction of his certificate, or circulating false and scandalous reports or issuing spurious certificates thus creating uncertainty as to the title or validity of existing shares. In all such cases, however, the wrongful act affects the shares directly. They are readily distinguished from the case at bar, where the plaintiff claims his shares were depreciated by wrongful acts

making possible the issue of six hundred shares of stock without payment therefor. Such a wrong being primarily against the corporation, the redress for it must be sought by the corporation. * * * Whatever injury befell him he suffered as a stockholder; and in a case like this, where the direct injury was to corporate rights and interests, the right to share in the compensation which the corporation may recover passes to the transferee of the plaintiff's shares. (*Winsor* v. *Bailey*, 55 N. H. 218.) Neither does it matter that the misconduct is charged against the defendants as individuals and not as officers. By whomsoever the wrongful acts were committed and in whatsoever capacity the wrongful doers acted, their acts directly injured the corporate body. Redress must be sought by the party injured. The plaintiff was injured only indirectly and collaterally. When the corporation is indemnified the plaintiff ceases to be a loser. It is for this reason, viz., that the plaintiff sustained no loss in addition to the loss to the corporation, that the action cannot be maintained notwithstanding the allegation that the wrongful acts were done with the specific intent and malicious and fraudulent design of injuring the plaintiff. If the plaintiff had suffered any loss in addition to that suffered by the corporation such an allegation would be sufficient although the injury suffered was indirect and consequential. (*Gregory* v. *Brooks*, 35 Conn. 437; *St. J. & L. C. R. Co.* v. *Hunt*, 55 Vt. 570.) In those cases a wrongful act was done to one with an unlawful intent and design to indirectly injure another, and both were injured. Here there is but one loser and one injury. When the injury is to the collective rights of the shareholders and the corporate property is made good, the plaintiff, who has suffered only in these, will be fully indemnified. There is therefore nothing for which he can maintain a separate suit. Where there is but one loss and one loser there can be but one suit, and that must be by the party who has suffered the loss."

(See, also, *Allen* v. *Curtis*, 26 Conn. 456; *Niles* v. *N. Y. C. & H. R. R. R. Co.*, 176 N. Y. 119.)

The gist of the wrong in any aspect is the abstraction of the moneys which were those of the Brazil company, and that company's ownership of the damages resulting from it. It is true that in the present case the defendant was a director of the shareholder, and it is alleged that such relation gave an additional element to his wrongdoing, making him liable to the plaintiff. But the fundamental facts exist that the direct and primary injury and single loss is to the Brazil company; that the loss to the plaintiff was simply an indirect consequence of that loss and not additional to or independent of it; that the Brazil company can recover its loss and that being done the plaintiff will be fully indemnified. The fact that the despoilers of the Brazil company were not its directors does not affect the natural results of their acts and is immaterial. (*Wells* v. *Dane*, 101 Me. 67; *Converse* v. *United Shoe Mach. Co.*, 185 Mass. 422.)

The case of *Ritchie* v. *McMullen* (79 Fed. Rep. 522) does not conflict with the foregoing reasoning and conclusions. There the defendant directors of the corporation were pledgees of the plaintiff's shares of its capital stock, and combined together and wrongfully reduced the value and income of the pledged shares with the intention of defaulting the pledgor, forcing the shares to a public sale, depriving the plaintiff of the means of redeeming them or buying them in, of buying them in at less than their value, and of thus increasing their holdings and causing the plaintiff to cease to be a stockholder and lose the benefits from his development of the properties. The basis of the decision there was that the pledgees used their positions as majority directors and their votes as stockholders intentionally to depreciate the stock of their pledgor with the dishonest purposes as mentioned. Clearly, the injury to the plaintiff was direct and peculiar. The case, in this aspect, belongs to

the class of which is *St. J. & L. C. R. R. Co.* v. *Hunt* (55 Vt. 570). For the reasons stated, I vote for reversal.

CHASE, MILLER and SEABURY, JJ., concur with CARDOZO, J.; COLLIN, J., reads dissenting opinion, and HISCOCK, J., concurs; WILLARD BARTLETT, Ch. J., absent.

Order affirmed.