**INN CHU TRADING CO., LTD., Plaintiff,**

v.

**SARA LEE CORPORATION and Champion Products, Inc., Defendants.**

**No. 92 Civ. 3152 (RLC).**

United States District Court, S.D. New York.

Oct. 28, 1992.

---

502

Kronish, Lieb, Weiner & Hellman (Alan Levine, of counsel), New York City, for plaintiff.

Skadden, Arps, Slate, Meagher & Flom (Kenneth A. Plevan, of counsel), New York City, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Inn Chu Trading Company, Ltd. ("Inn Chu") brings this diversity action against defendant Champion Products, Inc. ("Champion") alleging breach of contract and fraud, and against defendant Sara Lee Corporation ("Sara Lee") for aiding, abetting, and directing Champion's fraud and tortious interference with contractual relations. Defendants move to dismiss the complaint pursuant to Rule 12(b)(6), F.R.Civ.P., for failure to state a claim upon which relief can be granted, and under Rule 9(b), F.R.Civ.P., for failure to state fraud with particularity. In the alternative, defendants seek a stay of these proceedings pending the outcome of a related matter in New York State Supreme Court.

For the purpose of deciding motions to dismiss under Rule 12(b)(6) and Rule 9(b), F.R.Civ.P., the factual allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *See, e.g., Joyce v. Joyce Beverages, Inc.,* 571 F.2d 703, 706 (2d Cir.), *cert. denied,* 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978); *Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir.1986).[1]

The complaint recites the following facts. In February 1987, Champion, a sports and leisure wear manufacturer, entered into a license agreement with Phoenix Integrated, Inc. ("Phoenix"), granting Phoenix an exclusive right to use the Champion trademark on footwear products ("License Agreement"). Later that year, plaintiff Inn Chu began financing Phoenix in its manufacture, purchase, sale, and distribution of the Champion merchandise. Plaintiff, Champion, and Phoenix ultimately executed an "Agreement and Addendum to License Agreement" (the "Addendum"),[2] and shortly thereafter, Inn Chu with certain affiliates acquired a majority interest in Phoenix.

In the fall of 1990, executives of Champion and its corporate parent, Sara Lee, initiated discussions with Roberto Muller, then President of Phoenix, regarding Sara Lee's interest in purchasing Phoenix or its Champion license by the end of 1991. By June 1991, however, despite ongoing negotiations concerning the proposed acquisition,

---

**1.** Pursuant to Rule 12(b)(6), F.R.Civ.P., a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

**2.** The Addendum required that plaintiff maintain a controlling equity interest in Phoenix, assured that the underlying license agreement was in full force and effect, and outlined expectations for the development of an international distribution program.

the complaint alleges that defendants were deceitfully plotting to deprive Phoenix of its license without any compensation.[3] In furtherance of this scheme, Lewis Frankfort, then Chief Executive Officer of Champion, met with David Mark Brown, a Phoenix employee. Frankfort secretly offered Brown employment, and Brown provided him with confidential information concerning sales of Champion sportswear to a Japanese company.

The alleged deception culminated at a July 19, 1991 meeting at which Frankfort, Muller and the principals of Inn Chu discussed future prospects for Phoenix and its Champion license. Among other things, Frankfort related that Sara Lee wanted to buy Phoenix's license rights in 1991, and that defendants would assist Phoenix to expand its business. In reliance on these representations, Inn Chu invested an additional $3 million in Phoenix to fill outstanding footwear orders. Inn Chu now avers that defendants' July 19 statements "were false, were then known by [defendants] to be false, and were made with the intention of having plaintiff provide additional financing for Phoenix at a time when the defendants intended to terminate the ... license, thereby destroying the value of plaintiff's investment[.]" Complaint ¶ 34.

Fully aware that Inn Chu was providing additional financing, and to perpetuate Inn Chu's false expectations, defendants allegedly scheduled a meeting to continue repurchase discussions in August, 1991. Frankfort canceled the August meeting and rescheduled it for September, 1991, which meeting he later canceled and rescheduled for October 7, 1991. On October 3, 1991, Champion abruptly terminated Phoenix's license, citing "unauthorized" sales in the United Kingdom, Japan, and elsewhere in breach of the License Agreement. Complaint Exh. C.

## I. THE CONTRACT CLAIMS.

■ Pursuant to Rule 12(b)(6), F.R.Civ. P., defendants move to dismiss count one of the complaint, which alleges that Champion breached the License Agreement and the Addendum, on the grounds that plaintiff lacks standing to sue under the License Agreement and that no provision in the Addendum was breached.

■ The crux of Inn Chu's claim is that termination of Phoenix's license without proper justification and without notice or any opportunity for Phoenix to remedy the alleged contract violations constituted a breach of the Phoenix–Champion License Agreement.[4] Plaintiff asserts that it has standing to sue, even though it was not a party to the contract, because the Addendum guarantees Inn Chu the continued vitality of the License Agreement.[5] Whether the parties expected good faith performance of the Phoenix–Champion agreement to be an enforceable term of the Addendum is a question of fact which cannot be resolved at this stage.[6] For the

---

**3.** Inn Chu contends that it was simply the latest victim of a broader Sara Lee strategy to terminate targeted Champion licenses. Plaintiff alleges that Champion's licensees in Italy, Belgium, and Sweden, and its licensee for the manufacture and distribution of athletic socks in the United States were among the targets of this scheme. Complaint ¶ 22.

**4.** The License Agreement ¶ 14(c), as amended, provides in pertinent part: "[W]ith respect to [certain enumerated reasons for termination], this Agreement shall not be terminated unless the party claimed to be in breach or default receives written notice thereof by the party claiming breach or default and fails to cure said breach or default within thirty (30) days after receipt of notice. If the default is of the nature that it cannot be cured within such thirty (30) day period despite the best efforts of the breaching party, this Agreement may be terminated

unless steps to cure are commenced within thirty (30) days of receipt of notice, the cure is continuously and diligently pursued, and the default is completely cured within sixty (60) days of receipt of such notice."

"With respect to [other enumerated reasons for termination], this Agreement may be terminated if the breach or default is not completely cured within thirty (30) days of receipt of notice thereof." Complaint Exh. A.

**5.** The Addendum provides in pertinent part that "the License Agreement will remain in full force and effect so long as ... Phoenix faithfully performs its obligations under said License Agreement." Addendum ¶ 2

**6.** Plaintiff's alternate theory, that it can sue as a third party beneficiary of the License Agreement, is clearly mistaken. Under New York

purpose of the present motion, the court must accept as true Inn Chu's well-pleaded assertion that the parties so intended. *See, Vista Co. v. Columbia Pictures Industries, Inc.*, 725 F.Supp. 1286, 1296 (S.D.N.Y.1989) (Sand, J.). Thus, defendants' motion must be denied with respect to count one.[7]

■ On the other hand, count one is clearly subject to dismissal insofar as it claims that Champion breached the Addendum by failing to provide plaintiff with notice and an opportunity to cure Phoenix's alleged breach. None of the provisions in the Addendum can be construed to require the notice or opportunity to remedy which Inn Chu found wanting.[8] The apparent basis for this claim is an alleged promise by then Champion President Roger Holland that he would notify plaintiff of any conduct by Phoenix which Champion considered harmful to the value of the license.[9] Holland's promise, supposedly made prior to execution of the Addendum, does not appear in the final writing. Since the relevant provisions of the Addendum are unambiguous, that promise is inadmissible and, for our purposes, irrelevant. *See, e.g.,*

*International Klafter Co. v. Continental Casualty Co.*, 869 F.2d 96 (2d Cir.1989).

Defendants also move to dismiss, under Rule 12(b)(6), F.R.Civ.P., count two of the complaint, which alleges that Sara Lee intentionally and tortiously interfered with the License Agreement and procured Champion's breach using wrongful and fraudulent means.

■ To recover for tortious interference with a contract under New York law, a complainant must prove (1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, and (3) defendant's improper intentional interference with its performance. *Enercomp, Inc. v. McCorhill Publishing, Inc.*, 873 F.2d 536 (2d Cir.1989). There is a pertinent exception to this rule, however: "one who has a financial interest in the business of another is privileged to interfere with a contract between the other and a third party if his purpose is to protect his own interests and if he does not employ improper means." *Record Club of America, Inc. v. United Artists Records, Inc.*, 611 F.Supp. 211, 217 (S.D.N.Y.1985) (Conner, J.); *Felsen v. Sol Cafe Mfg. Corp.*, 24 N.Y.2d 682, 687, 301

---

law, which the parties agree applies, only an *intended* third party beneficiary can sue to enforce a contract. To qualify as an intended third party beneficiary, Inn Chu must prove that the License Agreement was entered into for its benefit, or at least that its benefit was within the contemplation of the parties. *See Grondin v. Rossington*, 690 F.Supp. 200, 206 (S.D.N.Y.1988) (Sweet, J.); *Strauss v. Belle Realty Co.*, 98 A.D.2d 424, 426–7, 469 N.Y.S.2d 948, 950 (2d Dep't 1983), *aff'd*, 65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985). Since plaintiff did not become involved with Phoenix until November, 1987, nine months after the contract was signed, Inn Chu clearly cannot meet this burden. *See Polyglycoat Corp. v. C.P.C. Distributors, Inc.*, 534 F.Supp. 200, 203 (S.D.N.Y.1982) (Duffy, J.). The myriad cases cited by plaintiff are inapposite; in each case the third party was already "in the picture" at the time the contract was made.

7. Even if Inn Chu has standing to enforce the License Agreement, defendants contend that plaintiff is still precluded from bringing this claim because Inn Chu is the majority shareholder of Phoenix which has already asserted a breach of contract claim in the state court based on the same events. This argument is without merit. Although Inn Chu's contractual relation-

ship with defendants is partially derivative of its ownership in Phoenix, Inn Chu also has a distinct contractual relationship with defendants by virtue of the Addendum. Inn Chu does not lose its right to enforce that obligation which runs directly to it simply because Phoenix has sued for the same underlying injury. It is a fundamental principle that "[t]he wrong does not cease to be remediable because it may also be a wrong to someone else." *General Rubber Co. v. Benedict*, 215 N.Y. 18, 23, 109 N.E. 96 (1915) (Cardozo, J.) (The parent company could bring a cause of action for breach of fiduciary duty, even though the subsidiary had brought a claim for conversion of assets against the same defendant and based on the same facts.) *Compare Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F.Supp. 127, 137 (S.D.N.Y.1988) (Goettel, J.).

8. The only provision in the Addendum which mentions notice to Inn Chu unambiguously states that plaintiff would receive notice if Phoenix failed to satisfy *the minimum sales requirement*. Addendum ¶ 4. The alleged breach involved unauthorized sales, not the minimum sales requirement.

9. Complaint ¶ 11.

N.Y.S.2d 610, 613, 249 N.E.2d 459, 461 (1969). This privilege is at the heart of defendants' motion to dismiss.

■ Inn Chu contends that Sara Lee's behavior exceeded the bounds of its privilege because a parent corporation motivated by malice or that uses wrongful means to procure its subsidiary's breach is not immune from liability. *Record Club, supra*, 611 F.Supp. at 217. Nonetheless, the only motive which plaintiff ascribes to Sara Lee is economic gain, which alone does not constitute malice. *See, e.g., PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 269 (2d Cir.1987).

However, plaintiff also challenges Sara Lee's invocation of the self-interest privilege on the ground that Sara Lee acted wrongfully by inducing Brown to provide the confidential sales information which Champion later asserted as a basis for discontinuing the license. Plaintiff's Memorandum in Opposition at 26. Sara Lee denies any role in procuring information from Brown, and refers to plaintiff's own complaint which merely alleges that Champion's President Lewis Frankfort, on behalf of both defendants, met with Brown to offer him employment. Complaint ¶ 26. Defendants note that the subsequent actions concerning Brown are attributed to Champion, not Sara Lee.[10] On the contrary, the clear thrust of plaintiff's claim is that Sara Lee initiated the effort to terminate Phoenix's license, that Sara Lee induced Champion to find a means to do so, and that Sara Lee at least collaborated in the implementation of these means.

Sara Lee also maintains that it would not have been improper to assist Champion in obtaining the sales records from Brown because that information was not confidential. In support of their position, defendants cite a provision of the License Agree-

ment permitting Champion to review all of Phoenix's records in connection with the licensed products. This provision, however, does not provide blanket authorization for defendants to pry into plaintiff's business at will and to use whatever information is gleaned to plaintiff's detriment.[11] Accordingly, the confidential nature of these records is a question of fact which cannot be resolved without further inquiry.

The complaint clearly alleges each element of tortious interference with contract: that a valid contract existed between Phoenix and Champion, that Sara Lee knew of that contract, and that Sara Lee wrongfully interfered with its performance. Moreover, Sara Lee's procurement of confidential records would not fall within the scope of the self-interest privilege. Therefore, the motion to dismiss must be denied as to count two.

## II. THE FRAUD CLAIMS.

■ Defendants contend that count three, which charges that Champion fraudulently induced Inn Chu to provide Phoenix with additional financing, is fatally defective in that the alleged fraud is not pleaded with the particularity required by Rule 9(b), F.R.Civ.P.. Under New York law, a cause of action for fraud must allege (1) misrepresentation of an existing material fact, (2) known to be untrue by the offending party, and (3) made with the intent to deceive and for the purpose of inducing the other party to act upon it. *See, e.g., Roney v. Janis*, 77 A.D.2d 555, 430 N.Y.S.2d 333, 335 (1st Dep't 1980), *aff'd*, 53 N.Y.2d 1025, 442 N.Y.S.2d 484, 425 N.E.2d 872 (1981); *Perez v. East Hampton*, 166 A.D.2d 640, 561 N.Y.S.2d 69, 71 (2d Dep't 1990). To satisfy the pleading requirements of Rule 9(b), the complaint must identify the action-

---

**10.** *"Champion* urged ... that the discussions be kept secret ..." Complaint ¶ 26 (emphasis added). *"Frankfort* sought and obtained confidential information from Brown ... Upon acquiring that information, *Champion* decided to use it ... to terminate the Phoenix license." Complaint ¶ 27 (emphasis added).

**11.** The License Agreement contains express limits on Champion's access to the records. It

provides that these records shall be accessible to Champion, but any examination by Champion "shall be at Champion's expense, [ ] shall be during normal business hours upon reasonable prior notice which shall be no less than five (5) business days, and [ ] shall not unreasonably interfere with the operations and activities of Phoenix." Complaint Exh. A at 14.

able false or misleading statement; must allege the time, place and circumstances of the statements; and must allege scienter on the part of the defendants, or conditions which give rise to a strong inference of knowledge or awareness. *Feigenbaum v. Marble of America, Inc.*, 735 F.Supp. 79 (S.D.N.Y.1990) (Leisure, J.); *Raffaele v. Designers Break, Inc.*, 750 F.Supp. 611 (S.D.N.Y.1990) (Carter, J.).

■ Defendants argue that many key particulars of the fraud claims are pleaded "upon information and belief." [12] Allegations of fraud cannot be based "upon information and belief," except as to matters peculiarly within the adverse parties' knowledge, and these allegations must be accompanied by a statement of the facts upon which the belief is founded. *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972); *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990).

■ Inn Chu contends that it has asserted a factual basis for its information and belief, citing its claim that defendants deceptively procured sales information prior to the July 19, 1991 meeting, and used it in planning to terminate the license. Plaintiff's Memorandum in Opposition at 34. At most, however, these allegations may explain how defendants learned of the sales to Japan, but they do not provide a viable basis for the claim that Champion intended to induce Inn Chu to extend additional financing to Phoenix.[13] Mere suspicions that a fraud may have occurred are not suffi-

cient. *Brickman v. Tyco Toys, Inc.*, 722 F.Supp. 1054, 1060 (S.D.N.Y.1989) (Carter, J.). Thus, count three is dismissed without prejudice. It also follows that count four, which alleges that Sara Lee aided and abetted Champion's fraud, must be dismissed as well since there can be no aider and abettor without a principal.[14]

## III. DEFENDANTS' MOTION FOR A STAY

■ Defendants also seek a stay of the present action pending the outcome of a related lawsuit in New York Supreme Court, Westchester County. A district court should limit its discretion to stay proceedings to "exceptional circumstances." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983); *see also Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

While the Supreme Court has provided no definitive checklist for determining whether the exceptional-circumstances test is met, it now requires examination of six factors in that inquiry: (1) the assumption by either court of jurisdiction over any res or property, (2) the inconvenience of the federal forum, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained, (5) whether federal or state law supplies the rule of decision, and (6) whether the state court proceeding will

---

12. Indeed, Inn Chu's pivotal fraud allegations, that defendants knew their July 19 assurances were false, and that defendants made these false statements in order to induce plaintiff to provide Phoenix with additional financing, are alleged "upon information and belief". Complaint ¶¶ 20, 23, 29.

13. Moreover, a major rationale for the strict pleading requirements under Rule 9(b) is to "inhibit the filing of a complaint as a pretext for discovering unknown wrongs." *Di Vittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). Thus plaintiff cannot rely solely on these facts as a basis for its suspicions because these allegations are also pleaded on information and belief. Complaint ¶¶ 26–28. Inexplicably, some key allegations pleaded on information and belief concern the

activities of Phoenix's own President, Roberto Muller, information which should be accessible to the plaintiff. Complaint ¶¶ 16, 18, 19, 24, and 30. Although some additional facts supporting plaintiff may be gleaned from Plaintiff's Memorandum or Affidavit in Opposition to Defendants' Motion, the court's function in a motion to dismiss is to determine whether the *complaint* is legally sufficient, not to weigh the evidence that might be presented at trial. *See, e.g., Polycast Technology Corp. v. Uniroyal, Inc.*, 728 F.Supp. 926, 936 n. 1 (S.D.N.Y.1989) (Walker, J.); *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985); *Duncan v. AT & T Communications, Inc.*, 668 F.Supp. 232, 234 (S.D.N.Y.1987) (Carter, J.).

14. *See, e.g., Morgan v. Prudential Funds, Inc.*, 446 F.Supp. 628, 632 (S.D.N.Y.1978) (Lasker, J.).

adequately protect the rights of the party seeking to invoke federal jurisdiction. *See, e.g., Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir.1986); *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir.1989).[15]

The overriding concerns expressed in *Colorado River, Cone Memorial Hospital*, and subsequent Second Circuit cases [16] are the avoidance of piecemeal or purely duplicative litigation and the concomitant waste of judicial resources. The linchpin of Inn Chu's contract claims against both defendants is the allegation that Champion breached the License Agreement by discontinuing the license without adequate justification and without providing notice or an opportunity to cure Phoenix's alleged contract violation. The same issue is at the core of the state action. Consequently, there is a strong likelihood of needless duplication of the state proceeding.

Other factors in the exceptional-circumstances test also support defendants' motion: only state law questions are presented, the state action commenced seven months prior to the present action and is actively progressing,[17] and plaintiff would not be prejudiced by a stay.[18] Therefore, this would be an appropriate case for a stay.

■ However, a stay in favor of state proceedings is generally disfavored where the state action would not dispose of the entire federal case. 12 Wright, Miller & Cooper, *supra*, § 4247. Since the state action has no bearing on plaintiff's fraud allegations, a stay would no longer be warranted if plaintiff exercises its right to replead the fraud claims and in so doing satisfies Rule 9.[19]

## CONCLUSION

In accordance with the reasoning set forth above, defendants' motion to dismiss the contract claims (counts one and two) pursuant to Rule 12(b)(6), F.R.Civ.P., is denied. Defendants' motion to dismiss the fraud claims (counts three and four) pursuant to Rule 9(b), F.R.Civ.P, is granted without prejudice and plaintiff is given leave until November 27, 1992 to amend its complaint in this respect. Defendants' motion for a stay is granted subject to reconsideration if plaintiff properly repleads.

IT IS SO ORDERED.

---

**15.** Defendants disingenuously contend that the stringent exceptional-circumstances test applies to abstention but not to motions for a stay. The Supreme Court in *Cone Memorial Hospital*, 460 U.S. at 19, 103 S.Ct. at 938, clearly rejected this very distinction. *Leber–Krebs, Inc. v. Clinton*, 517 F.Supp. 593, 596 (S.D.N.Y.1981) (Goettel, J.), cited by defendants and decided prior to *Cone Memorial Hospital* is inapposite. "It is beyond belief that this weighty obligation [, the exceptional-circumstances test,] can be escaped by a court that chooses not to exercise its jurisdiction but gives the label of 'stay' to what will in effect be a dismissal." 12 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4247. *See also De Cisneros v. Younger*, 871 F.2d 305 (2d Cir.1989). *But see, Names for Dames v. Gimbel*, 88 Civ. 3692, 1989 WL 82417, 1989 U.S.Dist. LEXIS 8297 (S.D.N.Y. July 12, 1989) (Keenan, J.). While the standard for a stay proposed by defendants and first enunciated by this court in *Universal Gypsum, Inc. v. American Cyanamid Co.*, 390 F.Supp. 824, 827 (S.D.N.Y.1975) (Cannella, J.), does not supersede the subsequent Supreme Court opinions on this matter the *Universal Gypsum* factors, such as considerations of comity, promotion of judicial efficiency, and the identity of parties and issues in both actions, are still useful criteria.

**16.** *See, e.g., De Cisneros v. Younger*, 871 F.2d 305.

**17.** Defendants' Memorandum of Law at 7–11.

**18.** The first factor, jurisdiction over a res, is inapplicable here. The second factor favors the plaintiff because defendants have not asserted that the federal forum is inconvenient.

**19.** For the same reasons, the court must await plaintiff's repleading prior to deciding defendants' request for a protective order against two discovery requests.