LILLIAN W. ADAMS, as Executrix of JULIA W. PAGE, Deceased, Respondent, v. PAUL R. CLARK et al., Appellants, Impleaded with Others.

**Fraud — false representations — evidence — promise — mere promissory statements as to what will be done in future not actionable — breaking of promise does not imply, of necessity, an intention at time of making not to perform — action to recover damage to stockholder through placing corporation in voluntary bankruptcy with her consent induced by alleged false representations and promises of defendants — when erro·to exclude evidence offered to show condition of bankrupt estate.**

1. Although a false representation as to a state of mind may be a false representation as to a material fact, it does not follow that every broken promise acted upon is actionable. Mere promissory statements

as to what will be done in the future are not actionable. Proof of failure to keep a promise may tend to establish the intent not to keep it, but the making of an unkept promise does not imply, of necessity, in all cases, a present intention not to keep the promise.

2. Where in an action based on alleged conspiracy to defraud, it is alleged that plaint'ff's testatrix, the holder of a majority of the stock of a corporation, believing and relying upon representations that one of the defendants would furnish necessary money to carry on the business if the company were reorganized through the formality of ·friendly bankruptcy proceedings, consented to the adoption of a resolution of the board of directors reciting that the corporation was unable to meet its obligations, whereupon the corporation was put into bankruptcy, its assets dissipated and the value of its stock destroyed, that defendants had no intention to furnish the necessary funds to carry on the business and did not furnish such funds and that their purpose was to obtain control of the corporation, it was error to exclude evidence offered by defendants to show the condition of the bankrupt estate. The bankruptcy proceedings, although not binding on the plaintiff, were at least competent and material evidence as bearing on the actual relation of the parties, the fraudulent purpose of defendants and the damages sustained by plaintiff. The fact that the company was wound up in bankruptcy at a great loss to its creditors, while not conclusive, has some bearing on the question whether defendants deliberately set out to wreck a going, solvent concern and thereby damaged testatrix, or whether the withdrawal of promised aid was due to their discovery of the true condition of things.

*Adams* v.. *Clark*, 208 App. Div. 827, reversed.

(Argued December 1, 1924; decided January 27, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 29, 1924, affirming a judgment in favor of plaintiff entered upon a verdict.

*Arthur E. Sutherland* and *Paul R. Clark* for appellants. The papers which were before James M. Knapp, when he was acting as receiver and trustee, should have been received in evidence to absolve him and Clark from the charge of bad faith in not putting money into the enterprise. (*Taylor* v. *Manning*, 190 App. Div. 559; *Duryea* v. *Zimmerman*, 121 App. Div. 560; *Given* v. *Powell*, 145

App. Div. 559; *Beaven* v. *Roach,* 142 App. Div. 541; Smith on Law of .Fraud, § 278.) The adjudication in bankruptcy and the final orders settling the accounts of the trustee and ordering distribution of the assets are *res judicata* upon the actual condition of the company. (*Bimberg* v. *Texas Co.,* 188 App. Div. 586; *DeGraff* v. *Lang,* 92 App. Div. 564; *Whitwell* v. *Wright,* 136 App. Div. 246; *Lazarus* v. *Eagan,* 206 Fed. Rep. 518; *Gratiot* v. *Johnson,* 249 U. S. 246; *Manson* v. *Williams,* 213 U. S. 453; *Graham* v. *B. H. & E. R. R. Co.,* 118 U. S. 161; *S. L. & T. Co.* v. *Benbon,* 96 Fed. Rep. 514; *Silvey & Co.* v. *Tefft,* 17 A. B. R. 9; *Gorham* v. *United E. & C. Co.,* 202 N. Y. 342.)

*William J. Baker* and *Grace F. Crampton* for respondent. The adjudication in bankruptcy is not *res adjudicata* upon the financial condition of the Wegman Piano Company. (*Matter of Butler & Co.,* 207 Fed. Rep. 705; *Matter · of Russell Wheel Co.,* 222 Fed. Rep. 569; *Matter of Mohawk Weaving Mills,* 47 Am. Bank. Rep. 241; *Matter of Moench & Sons Co.,* 10 Am. Bank. Rep. 240; 130 Fed. Rep. 685; *Matter of Northampton Portland Cement Co.,* 179 Fed. Rep. 726; *West Co.* v. *Lea,* 174 U. S. 590; *Matter of Foster Paint· & Varnish Co.,* 210 Fed. Rep. 652; *Matter of Duplex Radiator Co.,* 15 Am. Bank. Rep. 324; 142 Fed. Rep. 906; *Matter of Dressler Producing Corp.,* 262 Fed. Rep. 257, 259; *Montevallo Mining Co. [Lewis* v. *Roberts],* 294 Fed. Rep. 171; *Matter of Ann Arbor Mach. Co.,* 48 Am. Bank. Rep. 287.) Upon the issues in this cause the papers and records of the bankruptcy proceedings are incompetent and . immaterial and were rightfully excluded upon the trial. (*Stein* v. *Paper,* 183 Fed. Rep. 228; *Matter of Hines,* 144 Fed. Rep. 142; *Rutland Co. Nat. Bank* v. *Graves,* 19 A. B. R. 446; *Grandison* v. *Nat. Bank of Commerce,* 231 Fed. Rep. 800; *Matter of Kobre,* 224 Fed. Rep. 106; *Butler Paper Co.* v. *Gounbel,* 143 Fed. Rep. 295; *McDonald* v. *Clearwater Ry.*

*Co.*, 21 Am. Bank. Rep. 182.) Defendants are estopped by reason of their fraudulent acts from deriving any benefit from the adjudication or any of the proceedings or records in the matter of Wegman Piano Company, bankrupt. The rule of equitable estoppel and estoppel *in pais* applies. (*Witherell* v. *Kelly*, 187 N. Y. Supp. 43; *Bank* v. *Town of Solon*, 136 N. Y. 465; *Trustees, etc., of Town of Brookhaven* v. *Smith*, 118 N. Y. 634; *Blair* v. *Wait*, 69 N. Y. 113; *Rothschild* v. *Title Co.*, 204 N. Y. 458; *Herring-Curtis* v. *Curtis*, 200 N. Y. Supp. 7; *Davidson* v. *Ream*, 164 N. Y. Supp. 1037; *Friend* v. *Talcott*, 228 U. S. 27; *Maxwell* v. *Martin*, 130 App. Div. 80; *Matter of Ballantine*, 37 Am. Bank. Rep. 111.)

POUND, J. The action is based on a conspiracy to defraud. Plaintiff's testator, Mrs. Page (formerly Wegman), was the owner of a majority of the stock of the Wegman Piano Company, herein mentioned, which was a once prosperous concern in the city of Auburn, but was at the time of the transaction, although claiming to be solvent, in need of ready money and available working capital. The alleged purpose of the conspiracy was to destroy the value of her stock. The alleged plan of the conspiracy was that the Cayuga County National Bank should squeeze the piano company by discontinuing financial accommodations; that defendant Knapp should falsely and fraudulently represent that he would furnish necessary money to carry on the business if the company were reorganized; that defendant Clark should falsely and fraudulently represent to Mrs. Page that reorganization through the formality of friendly bankruptcy proceedings was the only proper method and that in order to make the proceeding possible it was necessary that a resolution of the board of directors be passed reciting that the corporation was unable to meet its immediate obligations, this admission being an act of bankruptcy although not an admission of insolvency.

(*Matter of Russell Wheel & Foundry Co.*, 222 Fed. Rep. 569.)

It is alleged that Mrs. Page, believing and relying on the representations, consented to the adoption of the resolution, although it was against the interests of the corporation and her own interests, and that thereupon the corporation was put into bankruptcy, its assets dissipated and the value of plaintiff's stock destroyed; that defendants had no intention of furnishing the necessary funds to carry on the business, and did not furnish such funds; that their purpose was to obtain control of the corporation.

Of the original defendants, William R. Payne, who was vice-president of the bank, and a partner of Clark, and the defendant bank were eliminated from the conspiracy on the trial, leaving Paul R. Clark and Alice Swaby Knapp, executrix of James M. Knapp, deceased, against whom plaintiff has obtained judgment. Knapp, it is said, was the pretendedly friendly capitalist who was to furnish the money and Clark was acting as the attorney for the Wegman Piano Company on the recommendation of the bank officials, but, it is charged, in bad faith and to bring about its destruction.

The case was tried on the theory that if Clark and Knapp made specific false affirmations to Mrs. Page of the arrangement under which the reorganization of the company was to occur, knowing that it was not so to occur, and damages resulted, the representations were actionable. (*Ritzwoller* v. *Lurie,* 225 N. Y. 464.) We may assume for the purpose of this appeal that the evidence was sufficient to go to the jury to the effect that the Wegman Piano Company was solvent, that the act of bankruptcy was obtained by the joint fraud of appellants and that Mrs. Page was damaged thereby. If by reason of such fraud Mrs. Wegman's stock became valueless, she suffered an injury for which the tort feasors were liable to her personally. (*General Rubber Co.* v. *Benedict,* 215 N. Y. 18.) Mrs. Page alleges that the value of her

stock was .$700,000, and that the same was rendered valueless by the fraud of defendants; the verdict of the jury was for $25,000.

It is contended by appellants that the bankruptcy proceedings were *res adjudicata* on the question of solvency (*Gratiot Co. St. Bk.* v. *Johnson*, 249 U. S. 246), or at least competent as bearing on the questions at issue. The learned trial justice held in effect that the regularity of the bankruptcy proceedings was not on trial; that their regularity might be assumed; that the question was merely whether the bankruptcy proceedings were initiated in fraud; that while there was no attack on the regularity of the proceedings themselves, they were not *res adjudicata* on the question of the solvency of the company because that question was not litigated. He, therefore, excluded as irrelevant the schedules, reports and other proceedings in bankruptcy which established for the purposes of the administration of the estate in bankruptcy that the company was insolvent and that its assets were insufficient to pay creditors more than ten cents on the dollar. He properly drew a distinction on the question of value between a live, going concern and the same concern in bankruptcy; but he further held that the adjudication in bankruptcy merely established the status of the corporation as a bankrupt and gave the court jurisdiction to administer the estate as that of a bankrupt. The fraud, he held, was in the obtaining of Mrs. Page's consent to an act of bankruptcy; the fruit of the fraud was the bankruptcy, and defendants could not take advantage of their own fraud. The non-existence of insolvency would have been no defense to the bankruptcy proceedings which were based on an act of bankruptcy merely. (*West Co.* v. *Lee*, 174 U. S. 590.) The principal question of law to be considered is whether it was error to exclude the evidence offered to show the condition of the bankrupt estate. Undoubtedly the theory of the learned trial justice was correct that the fraud, if established, set in

motion a train of disaster and that defendants cannot negative the fraud by proving the disaster. But the solution of the problem of the admissibility of evidence depends upon the circumstances of the rejected proof in relation to the whole case.

On the undisputed evidence it appears that the piano company, while claiming to have assets largely in excess of its liabilities, was far from prosperous; that it was troubled in obtaining extensions of credit; that it needed and was seeking a large amount of new capital. Although the complaint alleges that the conspiracy had for its object the acquisition of the business of the Wegman Company by defendants, it does not appear that this purpose was accomplished or sought. Knapp was appointed first receiver and then trustee of the property of the bankrupt company. As such he received his fees. Clark was employed as attorney and also received fees, but the alleged purpose of the conspiracy did not otherwise fructify. It was a closely disputed question of fact whether the company was in a position to meet its outstanding obligations when the act of bankruptcy was committed, or indeed, whether it was solvent at the time. It might be inferred that unless it could get new capital or make new loans to take up old ones, the company could not long continue to meet its outstanding obligations when they became due, or remain in business or keep out of bankruptcy.

We thus come down to the substantial questions (a) did Clark and Knapp falsely and fraudulently say that the bankruptcy would be a mere formality to go through with in order to effectuate a reorganization; (b) did Knapp, acting with Clark, falsely and fraudulently say that, if the corporation was put through bankruptcy, he would furnish the necessary funds to rehabilitate it. Was there a false representation as to an existing fact, *i. e.,* the mental state of the promisors, coupled with a false promise with regard to the future? (*Adams* v.

*Gillig*, 199 N. Y. 314); and (c) was Mrs. Page damaged thereby? For fraud and deceit alone do not warrant the recovery of damages. Deceit and injury must concur. ( *Urtz* v. *N. Y. C. & H. R. R. R. Co.*, 202 N. Y. 172, 173.) Did Knapp, acting with Clark, withhold the promised aid because he did not intend to put money into the concern when he first promised to? On these points the condition of the company, not as shown by book entries but as a practical proposition in the business world, becomes material. Although a false representation as to a state of mind may be a false representation of a material fact (*Deyo* v. *Hudson*, 225 N. Y. 605, 612), it does not follow that every broken promise acted upon is actionable. Mere promissory statements as to what will be done in the future are not actionable. (*People* v. *Miller*, 169 N. Y. 339, 350.) It may well be that Knapp intended to help the company, but with the best of intentions changed his mind when he discovered that its financial condition was hopeless. Disappointed hopes are not the basis of legal liability. If they were, no one, without making himself liable for damages, could innocently and in good faith say that he would advance money in aid of an embarrassed enterprise and then change his mind when it developed that the situation was not as rose colored as good-natured optimism had pictured it when the promise was made. Proof of failure to keep a promise may tend to establish the intent not to keep it, but common experience teaches us that such proof is not conclusive; that the making of an unkept promise does not imply of necessity in all cases a present intention not to keep the promise.

Although the trial justice charged the jury on this point, the bankruptcy proceedings, although not binding on the plaintiff, were at least competent and material evidence as bearing on the actual relation of the parties, the fraudulent purpose of defendants and the damages sustained by plaintiff. It is not altogether a question

of fair valuation. It is a question of legal liability for false representations. It is not altogether a question of dead property after bankruptcy has intervened. It is a question of a fraudulent purpose to break a . promise. It is not a question of breach of contract. It is a question of tort liability merely. The fact that the company was wound up in bankruptcy at a great loss to its creditors, while·not conclusive, has some bearing on the question whether Clark and Knapp deliberately set out to wreck a going, solvent concern and thereby damaged Mrs. Page, or whether the withdrawal of promised aid .was due to their discovery of the true condition of things. Promises as to what would be done in the future may have been effective in producing the result complained of, but the distinction must be observed between a mere assurance that something will be done in the future and a present intention not to act on such assurance.

The judgments should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, CRANE, ANDREWS and LEHMAN, JJ., concur; HISCOCK, Ch. J., and McLAUGHLIN, J., absent.

Judgments reversed, etc.