LILLIAN WEGMAN ADAMS, as Executrix, etc., of JULIA WEGMAN PAGE, Deceased, Respondent, *v.* PAUL R. CLARK and Another, Appellants.

Fourth Department, September 26, 1928.

*Sutherland & Dwyer* [*Arthur E. Sutherland* of counsel], for the appellants.

*William J. Baker*, for the respondent.

TAYLOR, J. This appeal is from a judgment of $20,000 in plaintiff's favor, upon the second trial of the action. At the first trial there was a nonsuit as to defendants William K. Payne and Cayuga County National Bank, who had been named in the complaint as coconspirators, and they are now out of the case. Plaintiff then had judgment for $25,000. This court affirmed, one justice dissenting (*Adams* v. *Clark*, 208 App. Div. 827). The Court of Appeals reversed and granted a new trial because the records in a bankruptcy proceeding (referred to later) were not received in evidence. The main facts and circumstances involved are stated in the opinion of the Court of Appeals (*Adams* v. *Clark*, 239 N. Y. 403).

This being concededly a fraud action, plaintiff was obligated to prove that between December 1, 1914, and February 1, 1915, defendant Clark and James M. Knapp, testator of defendant Alice S. Knapp, entered into a conspiracy to gain possession and control of the Wegman Piano Company, a stock corporation, and attempted to carry out the plot by influencing the directors to put the company through bankruptcy upon the false promise that Knapp would later invest a large sum of money in the company to continue the business — Clark and Knapp intending all the time that Knapp would invest nothing; that in carrying out the conspiracy the said promise, known by the alleged conspirators to be false, was relied on by plaintiff's testatrix, Julia W. Page, a heavy majority stockholder and a director, and its non-performance resulted in her financial damage, because the company was deprived of all its assets at the bankruptcy sale, when it could have successfully continued had the promise been kept. That is, the burden rested upon plaintiff to establish the promise, its falsity, scienter,

deceit and damage. In so doing she was not also required to prove that defendants actually accomplished any purpose of making money out of the company's downfall; but she was bound to prove that the company was solvent when Clark and Knapp made the promise claimed, or that even though it was perilously near insolvency, it would in all probability have gone on successfully had Clark not interfered at all or had defendant Knapp furnished funds in the amount promised.

Plaintiff's case rests mainly upon her own testimony and that of Julia W. Page, Henry Wegman and LeRoy Wegman. (Plaintiff is the daughter of Julia W. Page, testatrix.) Their testimony is to the effect that the piano company was solvent but that conditions were such that more capital was desirable for best results; that there were several conferences between defendant Clark and the members of the Wegman family; that about December 10, 1914, Clark was engaged as the company's attorney to obtain financial assistance; that the arrangement afterward made with Clark and Knapp was that $500,000 of preferred stock would be issued by the Wegman Company, Mrs. Page to have one-half of it and Knapp to put in $250,000 for the other one-half; Mrs. Page was to have $15,600 per year, in addition, from the date of her resignation from the presidency; that the company passed a resolution November 4, 1914, authorizing this payment to Mrs. Page; that Knapp's statement, after he had examined the books and the business, was that he then believed everything was all right, and that $30,000 was about what he had in mind to put in at first, and that he would put in $195,000 more as he thought the company might need it; and that finally the company went into voluntary bankruptcy and financial ruin in January, 1915, under Clark's advice and his suggestion that it was " a mere formality "— all in fulfillment of the conspiracy.

Defendants rely largely upon the testimony of defendant Clark denying the claimed fraudulent acts and intentions, and also point us to these considerations: That about December 3, 1914, some days before defendant Clark was engaged as attorney, Frank E. Wade, president of the Amphion Player Company, of Syracuse, which was a creditor of the Wegman Company in about $14,000, came to Auburn and insisted on payment; and that from Mr. Wade's testimony it would appear that the Wegman Company was practically, if not quite, insolvent at the time of his visit. Defendants also call attention to the following matters in the record, many of them undisputed: That the Wegman Company's plant was destroyed by fire in April, 1914, and a new building purchased for $50,000, and paid for entirely by a purchase-money mortgage;

that then the new plant was put into the books as worth $125,000; that immediately after the fire the Cayuga County Bank began to shut down on the piano company, reduced its credit line, required additional collateral and compelled the piano company to deposit over $40,000 of the insurance money with it, most of which was withdrawn right away for purposes other than replacement of the plant; that the building was repaired and the contractors not paid, mechanic's liens for over $10,000 being filed; that desperate remedies, like the forming of subsidiary companies, were indulged in to raise money and that in one instance a check was " kited; " also, that old and worthless accounts were manipulated so as to make them appear good; that in several instances the same piano lease was put up as collateral with different persons (LeRoy Wegman testifies these were " mistakes "); and in short, that various questionable methods were employed to fend off disaster before Clark was engaged at all; that a certain Kindler and Collins trial before the bankruptcy referee showed that the company was insolvent in the summer and fall of 1914, and that this fact is shown by letters written to the creditors by the piano company in the summer of 1914; that the testimony of Mrs. Page and Henry and LeRoy Wegman and Exhibit 22 (a report of the New York and Buffalo Audit Company) indicate the precarious financial condition of the company not only after it was in bankruptcy, but long before Clark had anything to do with it, and that all these facts and circumstances must have been known to Mrs. Page; that it is clear that any assurances or promises made by Clark and Knapp were made before the actual condition of the company was known to them; that some days before the bankruptcy resolution was passed by the Wegman Company, Clark said that he would not be able to interest other parties and was relieved from further duties by President Sherman. It was the suggestion of Mr. Nye, president of the Cayuga County Bank, that Knapp act as receiver and trustee; but it is apparent that Mrs. Page, through Mr. Burritt, her attorney, consented to Knapp's appointment, and that she made no objection to Clark's acting as his attorney.

Appellants also call attention to the fact that plaintiff's testatrix testified that she was familiar with her husband's piano and organ business from the year 1876; that she had bought a plant in Auburn, N. Y., for her first husband, Wegman; that Wegman died in 1894, and plaintiff married Page; that in the same year the business was incorporated at $125,000; that along through the years 1910 and 1913, by acquiring and retiring other people's stock, Mrs. Page became the owner of practically all of the stock; that she kept well informed as to the business, receiving daily reports and often

making factory inspections; that according to her best judgment, all the business transacted was with her knowledge; that the company did banking business with the Cayuga County National Bank for twenty-eight years; that for the reason that the company needed funds, defendant Clark (a lawyer) was called in at Mrs. Page's request for a conference December 8, 1914; that Mrs. Page had then been president and a director of the corporation since January 10, 1895. She continued to be a director till the bankruptcy proceeding and president till 1914, when a Mr. Sherman (an "efficiency man") became president. Sherman had evidently had little experience in the piano business, and the appointment and later promotion of Sherman seem to indicate that the piano company was in rather dire straits. Mrs. Page kept on examining the books, reports and financial sheets of the corporation, and her decisions were followed in matters of importance. She guaranteed some company indebtedness to banks and knew of letters being sent out to banks and private persons for loans before defendant Clark was engaged.

The nonsuit as to defendants Payne and Cayuga County National Bank — not appealed from — must be taken as a holding that the only possible conspirators were Clark and Knapp. It is interesting, although not controlling, that neither Knapp nor Clark acquired any assets of the Wegman Company. Respondent's contention that Knapp profited from the bankruptcy sale through a $275 transaction with one Hopper falls quite flat from lack of proof. All that Clark and Knapp are proved to have received or acquired were reasonable attorney's fees and allowances as receiver and trustee. Whatever the bank obtained by way of collateral or through requiring Mrs. Page to mortgage her home, etc., is not to be considered; for the bank is out of the case, and the acts of the bank are not charged to these defendants.

The fact that Knapp and Clark made no money through the wiping out of the piano company (except fees and allowances in the bankruptcy proceeding) would not necessarily absolve them, but it is something to be given weight. If this company had been technically solvent, but so in need of funds that insolvency was imminent, one can understand how designing men might have planned — and wrongfully influenced the directors of the piano company into helping to bring about — the bankruptcy of the company to their own financial advantage. But intent to deceive in a business transaction cannot be presumed. It must be proved. Although Knapp actually furnished no funds, this does not in and of itself prove fraudulent intent. Nothing that eventuated proves it. We find no satisfactory evidence that

Clark promised to do or did anything more or less than to do his best to enlist help for a dying business at Mrs. Page's request; or that if Knapp agreed to contribute capital, he refused to do so because of any conspiracy or fraudulent promise as claimed, or because he had it in mind all along not to contribute, or for any reason other than that he found out before it was too late for his welfare that the company's financial prospects were precarious. Nor does the record fairly point to a conclusion that the company was solvent when Clark took hold, or that — if really insolvent — it probably would have survived if Knapp had given financial aid.

On the former appeal this court was not unanimously in favor of affirming. Additional testimony appears in the present record, particularly the record in the bankruptcy proceedings, which weakens plaintiff's case. This testimony sheds further light upon the actual financial condition of the Wegman Company before (and after) Clark was engaged; it makes it appear more clearly that Mrs. Page must have known that the company's condition was precarious. Then upon the phase of the case as to which plaintiff's proof is weakest — the claimed corrupt mental state of Clark and Knapp, and their false promise to furnish help, amounting to fraud (*Deyo* v. *Hudson*, 225 N. Y. 602) — the condition of the piano company which was made apparent in the bankruptcy proceedings was sufficient to have convinced Knapp, if he was a man of ordinary business competency, that there was little hope for the corporation as a going concern in the future, whatever opinion he may have had before. It gave to any man, whose motives and integrity were beyond question, good reason for declining to fulfill a mere promise, honestly made, to invest in a business enterprise. The case is so barren of testimony adequate to show that Clark and Knapp intended or acted to deceive and defraud Mrs. Page that we cannot affirm. We have become convinced that upon the whole record plaintiff has not sustained her burden of proving by a fair preponderance of evidence either falsity of promise, scienter or deceit, even if any promise to contribute has been established.

We find no sufficient basis for the amount awarded as damages, viz., $20,000. Even though the fraudulent promise was made and not fulfilled, who can say — in view of all the proof as to the company's financial difficulties — that the company was not headed for ruin anyway? And in any event was Mrs. Page damaged $20,000 or $50,000 or $1? How can the amount be determined from this record? A pure guess — possibly based somewhat upon the mention of $20,000 by plaintiff's counsel in his summation to the jury — should not stand as the determination of the court.

Complaint is made by appellants, and not without good cause, that counsel for plaintiff was unfair in his summation to the jury. We are aware that in a closely contested trial the heat of conflict sometimes partially overcomes zealous advocates, and that oftentimes counsel must be allowed some latitude in their efforts to excel in deportment. But the claimed infractions in the instant case upon the rule that counsel must be fair and temperate may have had an improper influence upon the jury. And while we are not disposed to base our reversal directly upon irregular conduct of counsel, we feel impelled to express our disapproval.

The judgment and the order denying the motion for a new trial should be reversed upon the law and facts and a new trial granted, with costs to appellants to abide the event, upon the ground that the verdict is against the weight of the evidence as to all essential requirements. The order granting plaintiff an additional allowance of costs is also reversed.

All concur, except SEARS, J., not voting. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment and orders reversed on the law and facts and a new trial granted, with costs to appellants to abide the event.