Peck, J.
(dissenting). Although this action was instituted for an injunction and accounting, at trial the action took on the character of a suit for a declaratory judgment as to. the legality of certain provisions of an agreement between the parties. The trial court decided the case on that basis, and the appeal has been argued on that assumption. We deem it appropriate, therefore, to pass upon the legality of the agreement as the question is submitted. That question, as succinctly stated by the trial court in its opinion, is whether, on its face, and unrelated to any actual or pending corporate action, the challenged portions of the agreement offend public policy as declared in section 27 of the General Corporation Law of the State of New- York, which provides that “ The business of a corporation shall be managed by its board of directors * * • .”
The agreement here is an agreement between all the stockholders of Trenton-New Brunswick Theatres Company governing their relationship and the operation and management of the corporation. The corporation has 1,000 shares of stock, divided into four classes of 250 shares each, described as Class A-l, Class A-2, Class B and Class C stock. Each class of stock is given the sole and exclusive right to name one of the four directors. At the time of making the agreement and at the present time, the Class A-l and Class A-2 stock were and are owned by defendant B. F. Keith Corporation (hereinafter referred to as Keith), the Class B stock was and is owned by plaintiff Long Park, Inc., and the Class C stock was and is owned by defendant Trenton Theatre Building Company.
The parts of the agreement under attack provide that for its term of nineteen years the holders from time to time of the Class A-l and Class A-2 stock shall designate the management of the corporation, unless and until the management is changed as otherwise provided in the agreement. The management is given full authority and power to supervise and direct the operation and management of all theatres, including authority to buy and book all pictures and entertainment, to designate and change the entertainment policy and scale of admissions, to select, direct and discharge all personnel, to do any and all other acts and things which are customary in connection with the management of theatres, and to carry out such policies or projects as the board of directors of the corporation or its subsidiaries may approve.
The only provision for changing the management is that the holders of a majority of the B stock and a- majority of the C stock, jointly, may at any time and from time to time, during the term of the agreement, submit to the American *903 Arbitration Association the question as to whether or not the management should be changed from management by the holders of the A-l and A-2 stock to management by the holders of the B and C stock jointly. Such question shall be settled by arbitration in accordance with the rules of the American Arbitration Association. In event of change, all the foregoing rights, privileges and obligations of the management become vested in the holders of the B and C stock. The only way that such management can in turn be changed is by the American Arbitration Association on petition of the holders of the A-l and A-2 stock, in which event the management may be turned back again, and so on.
Simply stated, the management of the corporation is to be at all times named by half the stockholders. The remaining stockholders and the directors have nothing to say about it, and the only way the management can be changed is by direction of the American Arbitration Association, in which event the naming of the management shall fall to the other half of the stockholders. The directors at no time have any voice either in initiating or changing the management. It seems to me that the illegality of such an arrangement, under section 27 of the General Corporation Law providing that the business of a corporation shall be managed by its board of directors, is self-evident.
Special Term, observing .that there was no claim of misconduct by the present Keith management or any showing of actual or threatened injury to the corporate enterprise, creditors, stockholders or general public interest, quoted and relied upon a dictum in Clark v. Dodge (239 N. Y. 410, 415) to the effect that if the enforcement of a particular contract damages nobody, one sees no reason for holding it illegal, even though it impinges slightly upon the broad provision of section 27.
Without questioning that test, it does not go beyond sanctioning a modicum of impingement upon section 27. Neither the decision nor the language in Clark v. Dodge (supra) or in any other case with which I am familiar purports to sanction the abrogation or emasculation of section 27 by agreement of stockholders — even a unanimous agreement of all the stockholders. There are certain public policies which override the agreement of interested parties in the field of corporation law as -well as in other fields of the law. Certainly the agreement of interested parties is to be indulged as far as permissible. When it attempts to nullify established public policy as expressed in a statute, however, it cannot be justified or allowed on the basis that the parties have agreed to it.
Defendants point out that the directors actually concerned themselves with various phases of the management of the theatres, and that the practicality of the arrangement has been demonstrated by the success with which it has been carried out over a period of years. Defendants observe that the legality of the arrangement has at no time been questioned by plaintiff until the present disagreement over management policies, and contend that the only action which plaintiff should now be suffered to take is such action as the law allows in the event of an even division and stalemate among the directors.
I know of no principle by which illegality becomes hallowed by time, or, apart from some estoppel raised from being in pari delicto, by which acquiescence in illegality bars a later questioning of the legality of an arrangement. Naturally the question is not presented until there has been a falling out of the parties. I hardly think that the agreement of the parties and their acquiescence in it for many years amounts to being in pari delicto, and believe that the public policy and fundamental corporation law of the State, as expressed in section 27, warrant entertaining an issue of their violation at any time and, appropriately, by an action for a declaratory judgment.
*904 Defendants argue that both under a proper interpretation of the contract and actually the management remains subject to overseeing by the board of directors. I shall not pass upon the dispute as to this, either as to the interpretation of the agreement or as to the extent to which the board did act in overseeing the management. The power even to direct and supervise a management which a board of directors has no part in selecting or changing does not represent the authority or power of management. To argue that it does is tantamount to saying that it is of no importance who an employee is or who selects him so long as one has the power of directing him. We know that reality is to the contrary; that the essence of managing anything is the power to choose agents in whose capacity, character and personality one has confidence, and to be able to change that agency whenever one’s judgment dictates it. A mere power of direction or supervision over agents as to whose selection and term one has nothing to say falls far short of managerial control.
Nor may the decision in this case be rested on the assumption made by defendants that the agreement here is a contract for management by Keith for a period of years. We are not called upon to say whether a contract for management by a designated person or corporation for a period of years would be an illegal infringement upon the power of a board of directors under section 27 of the General Corporation Law. I shall assume for present purposes that it would not be. But this is no contract for management by Keith or any other designated person for any period of time. It is a contract for designation of the management from time to time by whoever happens to be from time to time the holders of certain classes of stock — that is Keith today, but maybe someone else tomorrow, and someone else the next day — the right to designate the management running with the particular classes of stock which happen to have the privilege that year. No one can say, under this contract, who will constitute the management next year, or even who will designate the management next year. The only thing which can be said with certainty is that the board of directors, which is by law vested with the powers and responsibility of management, will at no time have anything to say about it. The only authority in the matter, beyond those who happen from time to time to constitute the holders of certain classes of stock, is the American Arbitration Association, a complete outsider which is given an authority in respect to the management which has no sanction in law.
This is not an arrangement where practicalities may be hearkened to. Whether the arrangement is practical, whether it has proved workable, and whether it has been good or bad in its consequences are beside the point. The setup in its conception, spirit and format is wholly at variance with the spirit and requirements of the corporation law and the fundamental that management should' be vested in the board of directors. Nor does this case present any occasion for passing upon the extent to which the functions of a board may be impinged upon. The scheme here is a device wholly to avoid the law and is one which, regardless of the measure of supervision allowed the board, completely deprives the board of any voice in the selection or change of the management. This is a violation of section 27 of the General Corporation Law in a most fundamental respect.
The judgment should be reversed and judgment rendered declaring the agreement to be illegal and void in the respects considered.
Glennon, Dore and Cohn, JJ., concur in decision; Peek, J., dissents in opinion.
Judgment affirmed, with costs. No opinion. [188 Misc. 793.]