Heuby Clay Gtbeeubebg, J.
The defendant Harrison-Rye Realty Corporation (Harrison-Rye) moves for judgment on the pleadings, or in the alternative, for summary judgment in its favor.
Harrison-Rye owns a large tract of land in Westchester County, the major portion of which is leased to the defendant Westchester Country Club (Club), a membership corporation, which, as its name signifies, operates a country club, having a golf course and other recreational facilities. The individual defendants are officers or members of the board of governors of the Club. The action is at law to recover $2,600,000.
The action stems from a written agreement between the plaintiff and Harrison-Rye, entered into on May 17,1955, for the sale by Harrison-Rye to the plaintiff of approximately 58 acres of its tract for $95,700. The Club evinced concern, if not dissatisfaction, with this proposed sale, on the ground that part of the land embraced in it was under lease to it or was so close to the golf course as to interfere with proper enjoyment of the latter, or both. When efforts to resolve this controversy amicably failed, Harrison-Rye, by letter of its attorney, dated November 9, 1955, purported to exercise its option to cancel the contract of sale; the plaintiff disputed Harrison-Rye’s right to adopt this course and in November, 1955 brought an action for specific performance against Harrison-Rye in the Supreme Court, Westchester County. At about the same time, the plaintiff instituted *759 an action in the Supreme Court, New York County, against the Club and various individuals who were officers or members of the Club’s board of governors. Though not all the individual defendants in that action are defendants in the present suit, all the individuals who are defendants here were likewise defendants in the plaintiff’s 1955 New York County action. In that action his complaint charged the Club and the individual defendants with wrongfully persuading and procuring Harrison-Bye to repudiate its agreement of sale with him and demanded damages of $250,000.
During the pendency of these two actions conferences with a view to settlement took place. At a conference held on May 4, 1956 the following basic terms of settlement were agreed upon: (1) a 55-foot-wide strip was to be excluded from the land to be sold and conveyed to the plaintiff and was to remain under lease to the Club; (2) the rest of the land which Harrison-Bye had by the May 17, 1955 agreement undertaken to sell to the plaintiff was to be conveyed to him and the purchase price was to be abated by $25,000 from $95,700 to $70,700; (3) the two suits above mentioned were to be discontinued; and (4) the plaintiff was to give all the defendants releases. The closing in accordance with the foregoing settlement took place on September 20, 1956, on which date the deed and all the other documents were duly executed, but held in escrow pending approval by the Supreme Court of the Club’s release of any interest it might have in the premises conveyed to the plaintiff. Such approval was obtained and the deed and other documents were released from escrow and delivered on October 19, 1956. The two suits were discontinued by formal stipulation and in an agreement executed by the plaintiff at the September 20, 1956 closing he released the Club and the individual defendants of any claims he might have against them “ either collectively or individually based on an assertion that they, and each of them, wrongfully, knowingly, intentionally, and maliciously induced, persuaded and procured the party of the third part [Harrison-Bye] to violate, repudiate and break its said Contract of Sale ” and further released them from all liability ‘ ‘ in connection with any acts relating to or affecting the rights of the party of the first part ’ ’ (the plaintiff) under the May 17, 1955 contract of sale. .
During the interval between the conference of May 4, 1956, at which the settlement terms were agreed upon, and the closing of September 20, 1956, the plaintiff’s counsel had by letter requested the insertion in the deed to be given by Harrison-Bye, of a provision granting the plaintiff easements on its property for utilities, including a sewer easement; the proposed provision *760 was set forth at length in the letter. By formal letter, through its counsel, Harrison-Bye refused to grant the foregoing request and fixed a date for closing. At the closing of September 20, 1956 the plaintiff’s counsel renewed the request for a sewer easement over the premises adjoining those to be sold; the request was made repeatedly and uniformly rejected during the extended session. At one point the plaintiff’s attorney declared that the plaintiff could not go through with the transaction without obtaining the sewer easement and proceeded to leave. The plaintiff himself then intervened and said he had come to buy the property and wanted to go through with the transaction despite his lawyer’s objections. Accordingly, the deed, without the grant of an easement, was delivered into escrow at the September 20,1956 closing and accepted by the plaintiff on its later release from escrow.
Though the affidavit of the attorney who represented Harrison-Bye at the closing gives a detailed and circumstantial recital of the foregoing intended withdrawal of the plaintiff’s attorney and his return to the meeting when overruled by the plaintiff himself, the plaintiff’s answering affidavit does not even mention this incident. The plaintiff’s professed inability, on his examination before trial, to recall the reason for his lawyer’s threatened departure, though otherwise confirming the incident itself in every particular—true, he said it was not the sewers—is hardly a satisfactory denial or explanation. The more so, since two other attorneys were also present to look after the plaintiff’s interests and not one of his three attorneys has submitted an affidavit in contradiction. The plaintiff, moreover, does not' deny that another of Harrison-Bye’s attorneys on a number of occasions told him that Harrison-Bye would not give him a sewer easement. There is thus abundant proof, even without what happened at the closing, to establish conclusively that the plaintiff was throughout on clear and explicit notice that Harrison-Bye refused to grant the sewer easement.
The plaintiff’s complaint in this action contains two causes of action. The first is almost a replica of the 1955 complaint in the New York County action against the Club and the individual officers and members of its board of governors; it charges that the defendants wrongfully, maliciously and without reasonable justification persuaded and forced Harrison-Bye to repudiate and violate the May 17, 1955 agreement with him, which agreement forms part of the complaint. Self-evidently, this cause of action as against the Club and the individual defendants was released by the agreement of September 20, 1956, from which *761 we have quoted. Even if there could he a cause of action against Harrison-Rye, other than one for breach of contract, for permitting itself to be persuaded by third parties to break a contract made by it, that cause of action, too, must be deemed abandoned by the modification agreement of September 20, 1956 between the plaintiff and Harrison-Rye. The first cause of action is, therefore, without basis.
The second cause of action is lengthy and detailed; yet on final analysis it, too, has its source in the May 17, 1955 agreement and is grounded on the claim that the defendants have wrongfully deprived the plaintiff of its fruits. The critical question posed by this motion for summary judgment dismissing the complaint is whether the plaintiff has come forward with evidentiary material sufficient to show the existence of triable issues.
The greater portion of his second cause of action consists of a recital of events which antedated the September 20,1956 closing; any claim flowing from these prior acts and occurrences was surrendered by the release of that date already quoted, unless the release is tainted by fraud or the liability was revived by subsequent actionable misconduct. We search, therefore, for something of sufficient substance to create triable issues with respect to fraud or later actionable wrongs.
The complaint alleges a continuing conspiracy from May 17, 1955 to the present time to prevent the plaintiff from acquiring the property covered by the contract of that date and from building any homes thereon. Since, however, conspiracy as such is not civilly actionable (Green v. Davies, 182 N. Y. 499, 504; Brackett v. Griswold, 112 N. Y. 454, 466-467; Miller v. Spitzer, 224 App. Div. 39), the plaintiff must show the commission of acts recognized in law as tortious. Scrutiny of the plaintiff’s answering affidavit, read in the light of his complaint, shows that his grievance is still the refusal to allow him to connect the sewer mains or pipes on his property with those on the property of the Club and Harrison-Rye—in other words, the refusal to accord bim a sewer easement. In the face of the plain and persistent rejection of his demand for such an easement both before and at the closing of September 20, 1956, on what does he predicate his assertion that the denial of the easement is tortious ? The answer is found in paragraphs 33 and 40 of his complaint, in which he alleges that the defendants “ fraudulently induced ’ ’ bim to discontinue his lawsuits against them ‘ ‘ on their false promise that he would have their ‘ goodwill ’ and cooperation ’ ’ in the acquisition of the property and in building homes *762 thereon. In his answering affidavit he states again that the settlement was “ fraudulently induced.” This is the gist of his claim on which he must stand or fall.
The plaintiff has amplified his charge of fraud in paragraphs 17 and 25 (b) of his bill of particulars, as follows:
“ The basis for plaintiff’s agreement to settle the law suits referred to in Paragraph 33 of the complaint was that plaintiff would have the good-will of Harrison-Rye, Westchester and their Directors and Governors, particularly those who had been attempting to deprive him of the benefits of his contract. This was fully explained by plaintiff to counsel representing all defendants at the meeting on May 5, 1956. Plaintiff claims that all of the defendants were responsible for the representations which induced him to settle his action. Further particulars will be furnished, if requested, following the examinations before trial of defendants.
* * *
“ The granting of the consent to add and complete sewers through Westchester’s property was implicit in all the negotiations leading to the settlement of September 20, 1956. Defendants were aware that plaintiff planned to build houses on the property. The approved sewerage map of the Town of Harrison showed that sewers on plaintiff’s property would have to be connected to the pipes on Westchester’s property. This had been a matter of record since 1930. Even prior to May 17, 1955, defendant Harrison-Rye had .given plaintiff copies of maps showing where the sewers had to be placed. The settlement was premised on defendants giving their ‘ good-will ’ to plaintiff. The granting of the easement was included in such ‘ good-will ’.”
In his answering affidavit the plaintiff says: “ I can well understand defendants’ reluctance to include such a paragraph in the deed. At no time, however, did it occur to me that such protection was necessary for me to get permission to tie-in to the existing sewers.”
Since the asserted assurance of future good will and co-operatian is wholly promissory, it cannot support a claim for fraud (Adams v. Clark, 239 N. Y. 403, 410; Wiener v. Canterbury Homes, 286 App. Div. 862). Aside from this, study of the papers, including the plaintiff’s examination before trial, shows that no such promise was made. None of the defendants was present personally, either at the May 4 settlement meeting or at the September-20,1956 closing; these were attended only by counsel. Giving the plaintiff the benefit of the most favorable inference, in effect, all he says is that'he took it for granted that he would have the good will; self-evidently, this assumption is too slender *763 a prop for a claim of fraud. He himself does not even say that anyone told him he would enjoy good will. A claim of fraud, resting on nothing better than the plaintiff’s own assumptions and expectations at a meeting participated in by counsel, not by principals, when the parties were dealing at arm’s length, must be rejected. It follows that the 1956 settlement is impervious to attack for fraud.
The plaintiff advances no ground other than the asserted fraudulent inducement of the 1956 settlement on which the refusal to allow him to connect the sewers may be held unlawful. It has been shown that no evidence creating a triable issue as to this ground has been furnished by the plaintiff. Everything else in his complaint is incidental and subsidiary to the charge of fraud and necessarily falls under the ruling that this charge is without evidentiary foundation. The defendants’ motion for summary judgment is accordingly granted. This disposition renders academic the motion for judgment on the pleadings.