**Stuart SHEINBROT, M.D.; Erina Sheinbrot; Morton Katz: and Storch Sheinbrot & Singer, Physicians, P.C., Plaintiffs,**

v.

**Sondra PFEFFER, M.D., Defendant.**

**Irwin SINGER, M.D., and Denise E. Singer, Plaintiffs,**

v.

**Sondra PFEFFER, M.D., Defendant.**

Nos. 93 CV 5343, 94 CV 0649.

United States District Court,
E.D. New York.

Jan. 16, 1997.

Aury Bennet Stollow, P.C., New York City, for Action One plaintiffs.

Kelley Drye & Warren, New York City (John E. Kiley, of counsel), for Action Two plaintiffs.

Herzfeld & Rubin, P.C., New York City (Peter J. Kurshan, of counsel), for defendant.

NICKERSON, District Judge:

Plaintiffs brought these consolidated actions under Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–20 (Title III), and New York common law alleging that defendant Sondra J. Pfeffer, M.D. (1) intercepted and disclosed the substance of certain of their telephone calls ("the Interception Actions"), and (2) defrauded them by representing that she would become a shareholder or partner in their practice when she did not intend to do so ("the Fraud Actions"). These claims are raised in both 93–CV–5343, brought by Stuart and Erina Sheinbrot and Morton Katz ("the Sheinbrot plaintiffs"), and 94–CV–649, brought by Irwin and Denise Singer ("the Singer plaintiffs").

In late 1994, plaintiffs moved for summary judgment on the interception claims and Pfeffer moved for summary judgment dismissing the fraud claims for lack of jurisdiction. By memorandum and order dated July 12, 1995, this court partially granted plaintiffs' motion for summary judgment, holding that (1) defendant intercepted and disclosed plaintiffs' telephone calls within the meaning of Title III, (2) defendant acted with the requisite state of mind, and (3) none of the statutory exceptions to Title III applied. The court thus determined that plaintiffs had shown that defendant was liable on those claims but denied the plaintiffs' motion in part because it found that there was a genuine question as to whether plaintiffs' claims were partially barred by the statute of limitations. The court denied Pfeffer's motion for summary judgment, holding that the court had supplemental jurisdiction over the common law claims. By Memorandum and Order dated February 29, 1996, this court denied the parties' motions for reargument.

Plaintiffs now move (1) to strike or dismiss several of defendant's affirmative defenses and counterclaims in the Interception Actions, (2) to dismiss defendant's counterclaims, and (3) for partial summary judgment in the Fraud Actions.

The facts are summarized in this court's previous opinions, familiarity with which is assumed. For the purpose of this Memorandum and Order, the court notes that from 1988 until December 15, 1990, defendant Sondra Pfeffer was employed as a physician by Storch, Sheinbrot & Singer, Physicians, P.C. ("the Corporation"), a professional corporation practicing medicine with a specialty in radiology. At the particular times, plaintiffs Stuart Sheinbrot and Irwin Singer were the sole shareholders and operators of the Corporation. During Pfeffer's employment she and plaintiffs engaged in negotiations to make her a partner or shareholder in the Corporation.

### I. Affirmative Defenses

■ Pfeffer filed her Answer, Affirmative Defenses and Counterclaims on August 23, 1995, one month after this court ruled on the motions for summary judgment. The Singer plaintiffs now argue that this court should dismiss defendant's first, third, fourth, fifth, and sixth affirmative defenses on the ground that in the July 12, 1995 Memorandum and Order this court ruled that no genuine issue of material fact exists to support the contentions now made into defenses. The Sheinbrot plaintiffs argue that this court should dismiss the identical defenses in their case.

The defenses at issue are: that the complaints fail to state a claim upon which relief can be granted, that plaintiffs consented to defendant's actions, that defendant had a legitimate business interest in listening to plaintiffs' conversations, that defendant listened to the telephone calls in good faith reliance on the advice of counsel, and that defendant believed her actions to be consistent with her duty to report problems in their medical practice.

Pfeffer admits that this court's July 12, 1995 Memorandum and Order "determined the validity of five defenses asserted by defendant" and ruled in favor of plaintiffs.

Nonetheless, Pfeffer argues that she has "properly and in good faith alleged such defenses as affirmative defenses" to protect her interests "in the event this court grants reargument and reverses or modifies any finding made in the Memorandum and Order adverse to defendant." The court denied defendant's motion for reargument. Accordingly, the court dismisses defendant's first, third, fourth, fifth, and sixth affirmative defenses in both actions.

### II. Counterclaims

#### A.

■ The Sheinbrot plaintiffs argue that Pfeffer's fourth counterclaim should be barred by the doctrine of res judicata. The fourth counterclaim reads:

By virtue of plaintiffs' holding defendant out to the public as a partner and/or shareholder of defendants [sic] P.C., Brooklyn MRI, S. Leasing, SBMIS Corp. and Partnership, [defendant] is entitled to an accounting of the assets of such entities.

That counterclaim is virtually identical to Pfeffer's sixth cause of action in another action, *Pfeffer v. Singer*, 92–CV–2490, 1996 WL 733066 (E.D.N.Y. Dec. 10, 1996) which was previously filed and is still pending in this court:

By virtue of defendants' holding plaintiff out to the public as a partner and/or shareholder of defendants P.C., Brooklyn MRI, S. Leasing, SBMIS Corp. and Partnership, plaintiff must be deemed by operation of law to be a partner or shareholder of such entities, and is entitled to an accounting of the assets of such entities.

By Memorandum and Order dated July 13, 1993, this court dismissed the above claim on consent of the parties. According to the Sheinbrot plaintiffs, the dismissal operates as an "adjudication on the merits" under Rule 41(b) of the Federal Rules of Civil Procedure and bars the present counterclaim by reason of res judicata.

■ The doctrine of res judicata bars relitigation of a claim only after a final judgment has been rendered. The dismissal of count 6 in *Pfeffer v. Singer*, 92–CV–2490,

does not amount to a final judgment unless it was with prejudice. *Cf. Mellon Bank, N.A. v. United Bank Corp.,* Nos. 91–1066 and 94–423, 1994 WL 722003, at *5 (N.D.N.Y. Dec. 22, 1994) (citing 6 C. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1418 (2d ed. 1990)). A dismissal with prejudice "has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff on the same cause of action." *Nemaizer v. Baker,* 793 F.2d 58, 60 (2d Cir. 1986).

In the Memorandum and Order of July 13, 1993, this court did not indicate whether or not prejudice attached to the dismissal of Pfeffer's sixth cause of action. The opinion reads, in pertinent part, "Defendants' motion to ... dismiss count 6 is granted on consent."

■ Rule 41(a) of the Federal Rules of Civil Procedure provides that, "unless otherwise stated" by the court or by the parties consenting to a voluntary dismissal, a voluntary dismissal is "without prejudice." Involuntary dismissals under Rule 41(b), by contrast, generally result in prejudice. *But cf. St. Vincent's Hosp. & Medical Center v. Div. of Human Rights,* 553 F.Supp. 375, 378 (S.D.N.Y.1982).

The court determines that the dismissal was a voluntary dismissal within the meaning of Rule 41(a) and carries no prejudice. The court so rules because the dismissal was on consent and without any express limitation, and because, even though Pfeffer apparently consented to dismiss that count for strategic litigation purposes, *see* Affidavit of Sondra J. Pfeffer, at ¶ 19 (Apr. 17, 1993), it would be inequitable to attach prejudice to her decision when plaintiffs' Fraud Actions in 93–CV–5343 and 94–CV–649 are based on the same partnership negotiations that were the subject of Pfeffer's original count 6. The court therefore declines to dismiss Pfeffer's fourth counterclaim in the present actions.

### B.

■ The Sheinbrot plaintiffs seek to dismiss Pfeffer's first and third counterclaims on the ground that they fail to state a claim upon which relief can be granted. Those plaintiffs interpret the first counterclaim to allege that plaintiffs failed "to live up to their assurances that Defendant would become a coequal partner and shareholder," and the third counterclaim to allege that plaintiffs breached an "oral agreement" to make defendant a partner.

Pfeffer's first counterclaim occupies eighteen pages with forty-four numbered paragraphs. The substance of the claim is not clear from her pleadings. Pfeffer's Memorandum of Law in Opposition to Plaintiffs' Motion explains the first counterclaim to allege that plaintiffs in bad faith breached an oral contract to make her a partner and that she detrimentally relied on that contract. The third counterclaim alleges that plaintiffs breached an agreement to "make defendant a *bona fide* partner." The court discerns no cognizable difference between these two claims and thus considers them together.

■ Under New York law "[m]ere promissory statements as to what will be done in the future are not actionable." *Sabo v. Delman,* 3 N.Y.2d 155, 161, 164 N.Y.S.2d 714, 718, 143 N.E.2d 906 (1957) (quoting *Adams v. Clark,* 239 N.Y. 403, 410, 146 N.E. 642 (1925)). Pfeffer does not argue that plaintiffs breached an oral partnership agreement already reached but not yet reduced to writing. *See, e.g., Keen v. Jason,* 19 Misc.2d 538, 187 N.Y.S.2d 825, 828 (Sup.Ct.1959), *aff'd,* 11 A.D.2d 1039, 207 N.Y.S.2d 1001 (2d Dep't 1960). Rather, she claims that plaintiffs breached an agreement to enter into a partnership agreement, which is precisely the sort of promissory statement held not actionable under New York law.

Pfeffer argues that *Sabo* actually supports her case because it notes that a promise made "with a preconceived and undisclosed intention of not performing it" may be actionable as a fraudulent misrepresentation. *Sabo,* 3 N.Y.2d at 160, 164 N.Y.S.2d at 716, 143 N.E.2d at 907. This doctrine relates to Pfeffer's second counterclaim, the substance of which is plaintiffs' alleged fraudulent misrepresentations during their partnership negotiations and it has no bearing on the claims of breach of an oral contract.

Accordingly, the court finds that Pfeffer's first and third counterclaims in both cases fail to state a claim upon which relief can be granted. In dismissing these claims the court leaves standing those allegations of fact that are relevant to Pfeffer's second and fourth counterclaims.

### C.

■ Sheinbrot also moves for an order dismissing or granting summary judgment on Pfeffer's second counterclaim pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. That counterclaim is based on Pfeffer's allegation that plaintiffs Irwin Singer and Stuart Sheinbrot committed fraud and "never intended for her to become an equal partner."

■ In order to succeed in a fraudulent misrepresentation claim under New York law, Pfeffer must prove:

(1) that [plaintiffs] made a representation (2) as to material fact (3) which was false (4) and known to be false by [plaintiffs] (5) that was made for the purpose of inducing [Pfeffer] to rely on it (6) that [she] rightfully did so rely (7) in ignorance of its falsity (8) to [her] injury.

*Murray v. Xerox Corp.,* 811 F.2d 118, 121 (2d Cir.1987) (citing *Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (2d Dep't 1980)). While not all broken promises acted upon are actionable under New York law, "if a promise was made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of a material existing fact." *Sabo v. Delman,* 3 N.Y.2d at 160, 164 N.Y.S.2d at 716, 143 N.E.2d at 907; *see also Perma Res. & Dev. Co. v. Singer Co.,* 410 F.2d 572, 575 (2d Cir.1969). Such false representations as to state of mind are actionable only if the promissors did not intend to keep their promise at the time they made it. *Adams v. Clark,* 239 N.Y. 403, 411, 146 N.E. 642 (1925). Thus, Pfeffer must prove that, at the time plaintiffs allegedly promised to make her a partner, each had no intention of carrying out their promise.

Plaintiffs argue that defendant has not pleaded fraud with the requisite particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. That rule provides:

FRAUD, MISTAKE, CONDITION OF THE MIND. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

That rule requires those claiming fraud to "plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991) (quoting *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (1990)). The court therefore considers whether Pfeffer's second counterclaim pleads facts sufficient to give rise to a strong inference that plaintiffs did not intend to follow through on a promise to make her a partner at the time they made the promise.

The court agrees that Pfeffer has alleged no facts from which one could infer fraudulent intent on the part of plaintiffs regarding their partnership negotiations with her prior to mid–1990. The court therefore dismisses Pfeffer's fraud claims to the extent they relate to events prior to mid–1990.

■ But Pfeffer has alleged facts which could support a finding of fraudulent intent in late 1990. In addition to her allegations involving only Irwin Singer, Pfeffer makes the following allegations involving both Singer and Stuart Sheinbrot. During the fall of 1990, says Pfeffer, plaintiffs "embarked on a campaign of humiliation and embarrassment" against her "to force [her] to leave the practice and forego her partnership." Pfeffer's Answer, Counterclaims, and Affirmative Defenses in Action I, at ¶ 56. She also alleges that plaintiffs tried to prevent her from reporting certain fraudulent practices of the Corporation. *Id.* at ¶¶ 46, 55, 59. She did not learn of those practices until 1990. *Id.* at ¶ 46. Finally, she alleges that plaintiffs secretly interviewed radiologists to replace her. *Id.* at ¶ 56(4).

The pleadings do not indicate whether the parties had ceased partnership negotiations by the time these incidents took place. There remains a genuine issue of material fact as to the timing of these incidents rela-

tive to plaintiffs' promises to make Pfeffer a partner. If plaintiffs' promises to make her a partner continued around the time of these incidents, then the court finds that Pfeffer has pleaded facts sufficient to support a finding of fraudulent misrepresentation and to survive a motion to dismiss under Rule 9(b). Plaintiffs' motion to dismiss Pfeffer's fraudulent misrepresentation counterclaim is denied with respect to events which took place in late 1990.

### D.

▆ The Singer plaintiffs argue that all of Pfeffer's counterclaims should be dismissed because they are duplicative of various common law claims in her complaint in *Pfeffer v. Singer,* mentioned above and still pending. Pfeffer concedes that her counterclaims "arise out of the same factual predicate[s]" as certain claims in that case, but she says the legal theories differ.

▆ In the interest of sound judicial administration, the court will not permit the same claims to go forward in separate actions. *See Baker Indus., Inc. v. Cerberus Ltd.,* 549 F.Supp. 312, 314 (S.D.N.Y.1982); *cf. Southern Constr. Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962) (discussing policy underlying Rule 13 of avoiding multiplicity of actions and of resolving in a single suit "all disputes arising out of common matters"). That claims arising out of the same transactions may rely on different legal theories does not eliminate their redundance. *Cf. Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (doctrine of res judicata applies to claims arising out same factual groupings even when based on different legal theories); *Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 39 (2d Cir.1992).

The court agrees that the counterclaims in these actions are duplicative of her common law claims in *Pfeffer v. Singer.* In *Pfeffer v. Singer,* Pfeffer alleges (1) & (2) that her former employers discriminated against her in the terms and conditions of her employment because of her gender; (3) that her former employers fired her in breach of their employment contract; (4) that they failed to return property belonging to her; (5) that they willfully withheld compensation from her; (6) that they fraudulently held her out to be a partner and denied her a partnership; (7) that they retaliated against her for refusing to engage in shady business practices; and (8) that they tortiously tried to prevent her from securing new employment. The facts underlying Pfeffer's four counterclaims in the instant actions are essentially the same as those underlying Count 6 in *Pfeffer v. Singer* and are related to those underlying her other common law claims in that action.

▆ The court will resolve the duplication of claims in the following manner. With the exception of her claims arising under the New York Human Rights law, all Pfeffer's surviving state law and common law claims in *Pfeffer v. Singer* will be tried together with the common law claims in these consolidated actions. The only claims that will be tried in *Pfeffer v. Singer* are those alleging discrimination on the basis of sex, namely, Counts One and Two. The court so divides the claims because it determines that the facts underlying the sex discrimination claims are independent of those underlying the other claims, while the facts underlying the other state and common law claims are interdependent. In addition, by consolidating the state and common law claims into the instant actions, the court avoids doubts over whether it has supplemental jurisdiction in *Pfeffer v. Singer* over those claims. This ruling ensures that, with the exception of Pfeffer's sex discrimination claims which involve distinct sets of fact and require different evidence, all the claims arising out of the parties' partnership negotiations and employment relationship will be tried in one action.

### III. Partial Summary Judgment in Fraud Action

▆ The Sheinbrot plaintiffs move for partial summary judgment on their fraudulent misrepresentation action based on statements made by Pfeffer in her depositions on September 30, 1993, October 1, 1993, and October 7, 1993. They argue that Pfeffer admitted "to falsely representing her intention to become a partner/shareholder in Plaintiffs' medical entities for the purpose of inducing Plaintiffs to continue in contract

negotiations with her and that ... she [did] induce them to continue in contract negotiations."

The court will grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on Sheinbrot, the moving party, to show the absence of any genuine issue of material fact, and the court draws all factual inferences in favor of Pfeffer, the party against whom summary judgment is sought. *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The elements of common law fraud as outlined above are a material, false representation by defendant, an intent to induce reliance or defraud, plaintiffs' reasonable reliance on that representation, and plaintiffs' resultant injury. *Murray v. Xerox Corp.,* 811 F.2d at 121. Each element of fraud "must be established by clear and convincing evidence." *Katara v. Jones Commodities, Inc.,* 835 F.2d 966, 971 (2d Cir.1987); *see also Simcuski v. Saeli,* 44 N.Y.S.2d 442, 452, 406 N.Y.S.2d 259, 265, 377 N.E.2d 713, 718 (1978). *In the Matter of the Estate of John Evanchuk,* 145 A.D.2d 559, 561, 536 N.Y.S.2d 110, 112 (2d Dep't 1988).

Plaintiffs rely on the following statements in support of their motion. In her depositions relating to 92–CV–2490, Pfeffer said that by the summer of 1990, she was having "second doubts" about becoming a partner/shareholder in the Corporation. By October 31, 1990, she no longer felt she could, in good conscience, enter into "[a]ny business employment or other business relationship" with plaintiffs. She was no longer interested in their promise to make her a partner. Nevertheless, Pfeffer admitted she continued to engage in some partnership negotiations with plaintiffs. For instance, she discussed the purchase price or buy-in to the Corporation with them. She did this "because [she] was angry, because of the way [she was] treated."

The court agrees that Pfeffer's deposition statements demonstrate the requisite scienter for the tort of fraudulent misrepresentation with respect to her partnership negotiations with plaintiffs on or around October 31, 1990 and thereafter. Simply put, the depositions show that Pfeffer intended to give plaintiffs the impression that she desired to enter into a partnership agreement with them on or around October 31, 1990 when she was no longer interested.

Pfeffer's contention that her affidavits dated February 18, 1994, March 31, 1994, September 9, 1994, and December 29, 1994 better explain her actions and support a denial of summary judgment is unavailing. It is well settled that "a party's affidavit which contradicts [her] own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987); *see also Perma Res. & Dev. Co.,* 410 F.2d at 578 (opposite result "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact").

Nevertheless, not all misrepresentations of intention are actionable. Plaintiffs have not met their burden in demonstrating by clear and convincing evidence that there is no dispute as to material fact regarding the other elements of fraudulent misrepresentation.

Specifically, plaintiffs have not shown that they relied on Pfeffer's representation and that their reliance was reasonable. There remains a question of fact as to whether plaintiffs intended to make Pfeffer a partner at the time of her misrepresentation. A finding that plaintiffs were not interested in making Pfeffer a partner undermines their contention that they reasonably relied on Pfeffer's representation that she was still interested in becoming a partner. All plaintiffs have shown is that when Pfeffer represented, by inquiring about the purchase price into the Corporation, that she wanted to continue partnership negotiations with plaintiffs, she no longer wanted to become plaintiffs' partner. That showing is insufficient to establish fraud for the purpose of summary judgment.

Plaintiffs' motions to dismiss defendant's affirmative defenses, first and third counter-

claims in both actions is hereby granted. Plaintiffs' motions to dismiss defendant's fourth counterclaims in both actions is denied. The Sheinbrot plaintiffs' motion to dismiss defendant's second counterclaim is denied in part and granted in part. The Singer plaintiffs' motion to dismiss all of defendant's counterclaims is denied to the extent described above. The Sheinbrot plaintiffs' motion for partial summary judgment on their fraudulent misrepresentation action is denied.

Defendant's second counterclaim in both suits, to the extent it alleges that plaintiffs' partnership offer and negotiations after the summer of 1990 were made with fraudulent intent not to make her a partner, remains unaffected by these motions. Defendant's fourth counterclaim, to the extent it alleges injuries resulting from plaintiffs' holding her out to the public as a partner or shareholder, also stands. All of the above rulings apply in both 93–CV–5343 and 94–CV–649.

So ordered.